In re Estate of Frederick Immendorf, deceased. Appeal of George Immendorf, in his own behalf and for Annie Immendorf Winkens and the Commonwealth Title Insurance and Trust Company, Guardian of Mary Immendorf.

*Decedents' estates—Liquor license—Administrator.*

Where a licensed retail saloon keeper dies two months after his license has been granted, and his wife who was his administratrix shortly afterwards secures a transfer of the license to herself, and subsequently sells the business to another, without having made any effort to sell the goodwill of the business for the benefit of the estate, she will be properly surcharged with the proportion of the license fee which the time she has the benefit of it bears to the whole year, but where she has replenished the stock at her own expense, and increased the value of the good-will, she will not be charged with the full amount received by her for the business.

Argued March 22, 1899. Appeal, No. 9, Jan. Term, 1899, by George Immendorf et al., from decree of O. C. Phila. Co.. Oct. Term, 1897, No. 549, dismissing exceptions to adjudication. Before STERRETT, C. J., McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Exceptions to adjudication.

The auditing judge, Ferguson, J., filed the following opinion :

The facts of this case as they appeared from the evidence were that Frederick Immendorf had a license for a tavern at No. 1103 Passyunk Road, which ran for the term of one year from June 1, 1896. He died on July 13 of that year, after having been sick for a considerable period of time, during which he was unable to attend to his business. On August 5, upon the application of the widow, the court transferred the license to her, and on August 6 she took out letters of administration upon her deceased husband's estate. Upon taking possession of the saloon she had to paint and paper it and put in a new stock of liquor, etc., as all that was on the premises had been consumed. She states she had to get all new stock in. She continued to carry on the business until December 19, 1896, when she sold out the stock, good-will, fixtures, lease and unexpired term of license to Theodore Hee, for $5,000. It will be observed that when the widow took possession of the premises there was no lease for the same, the title being in the decedent, upon his death, vested in his children. They subsequently granted a lease, but there was none in existence at the time of the transfer of the license to the widow, so that when the widow took possession, all that there was to have value added to it by reason of the transfer of the license was the fixtures, and there was no attempt to show that they were not appraised at their full value and good-will, which, on account of decedent's long illness, was, perhaps, of little value.

What had the widow to sell when she sold in December to Theodore Hee, for $5,000? She had obtained a lease. She had the unexpired term of the license, which was about half a year. She had the fixtures and furniture. She had the improvements which she at her own expense had put on the premises. She had a stock of liquors and cigars which she had laid in. She had the good-will, which no doubt had increased in value from what it was at the time of decedent's death.

In Buck's Appeal, 185 Pa. 57, there was evidence that at the time of the transfer of the license a higher price could have been obtained for what the administrator had to sell. There is no such evidence in this case, and the fact that over four months afterwards the widow sold at an increase in value does not justify the conclusion that the value was there when she purchased. In fact, it is evident from what has already been stated that she

added to the value by what she did after the place came into her possession. What she sold at is, therefore, no standard to measure the value at the time she purchased. As the license cost the decedent $1,000, and, as the widow got possession of it two months after it was granted, the auditing judge thinks she ought to be charged with the license fee for ten months, or $833.33, particularly, as when she sold to Hee, the unexpired term of the license was no doubt part of the consideration for which he paid the $5,000.

On exceptions, HANNA, P. J., filed the following opinion:

It appears the decedent died intestate on July 31, 1896. He was a saloon keeper, and a retail liquor license had been granted to him by the court of quarter sessions for the period of one year from June 1, 1896. It had therefore ten months to run prior to its expiration. On August 5, 1896, the court of -quarter sessions granted a transfer of the license to the alleged widow, and on the day succeeding she was granted letters of administration upon the estate of her deceased husband. In December following, upon her petition, alleging her ill health and that she had obtained a purchaser for the business theretofore carried on by her, the court also granted a transfer of the license she had obtained to the purchaser from her. As decedent was the owner of the premises occupied as a saloon, the parties interested in the real estate, viz: the alleged widow, decedent's children of full age and the guardians of his minor child and grandchild, entered into a lease of the premises to the purchaser of the unexpired term of the license, good-will, fixtures, etc. The lease is dated December 1, 1896, but the term was to begin January 1, 1897. The consideration for the sale to the lessee was the sum of $5,000. In view of the dates here given and shown in evidence we cannot discover any error in the finding of the auditing judge that the unexpired term of the license was sold in December, 1896. And in view of what is said by the Supreme Court in Grimm's Estate, 40 W. N. C. 385, and Buck's Appeal, 185 Pa. 57, the accountant is clearly not chargeable as administratrix with the amount received by her from the sale of the unexpired term of the retail license granted to her. As held in the cases cited, the license to sell liquor is a personal privilege which expires with the death of

the licensee, and does not pass to his legal representative, nor is it to be considered an asset of his estate. But as adverted to by the auditing judge, the fact that the premises licensed as a tavern or saloon has been a long established place for the sale of liquor, while the license itself is not marketable, yet it having been granted for that particular place, may add materially to the value of its fixtures, good-will (that is, the value of the business carried on), and unexpired term of the lease, if any. These the executor or administrator has for sale, do form part of the assets of the decedent's estate, and for which it is his duty to obtain the best price possible either by a public or private sale. As said in Buck's Appeal, supra, "When this is shown to be the case, and the accountant has failed in the performance of a plain duty, there is ground for a surcharge." In this case the accountant is charged with a proportion of the license fee paid by decedent, viz: for ten months, upon the ground that it undoubtedly formed a part of the consideration paid by the purchaser for the fixtures and good-will of the business, and to this extent it formed a part of the assets of the estate. As the auditing judge states in the readjudication that the widow did not have a lease of the premises occupied as a saloon, the exception to his finding that she had secured a lease must have been prepared under a misapprehension.

It appears that the inventory and appraisement of the personal estate was not filed until December 2, 1897, over one year and four months after the death of decedent, and one year after the sale by accountant to the purchaser of the barroom fixtures, etc. It is somewhat difficult to realize how such an appraisement could be made after that lapse of time, and after the sale of the articles inventoried. The accountant is clearly culpable in this respect, especially when she had counsel from the date of her husband's death. Such laches and delay also lends color to the suspicion of unfairness and want of good faith of accountant from the noticeable absence of any stock of wines, liquors, etc., from the inventory and appraisement. Accordingly a claim was made to surcharge her with the value of the wines, beer, etc., in the possession of decedent at the date of his death. But the difficulty attendant upon the attempt of the exceptants, arising from lapse of time and inability to obtain precise and accurate testimony upon the subject, must be self-evident.

After a careful examination of the testimony produced, no other conclusion can be reached than that to which the auditing judge arrived. In fact, there was no evidence from which could be ascertained either the actual quantity of liquors, etc., in the possession of decedent at the time of his death or their value. And that accountant, when she obtained a transfer of the license, was obliged to replenish the saloon is readily accounted for from the fact that the liquors, beer, cigars, etc., upon the premises at the time of decedent's death, rapidly disappeared and were consumed prior to the interment of his remains and at his funeral in dispensing the usual hospitalities of such an occasion.

*Errors assigned* were in dismissing exceptions to adjudication.

*Samuel J. Taylor*, for appellants.—It is the uniform practice of the court where decedent kept a licensed saloon to grant a license for the unexpired term of the license to the widow, where there is one: Grimm's Est., 181 Pa. 233 ; and where there is no widow to one or more of the children, if of age ; and where no widow or child exists, often to the parent or brother of the decedent, Buck's Est., 185 Pa. 57, clearly recognizing these persons in this order as those most interested and those whom it is the policy of the law to benefit in such cases.

This case is ruled by Buck's Est., 185 Pa. 57.

*Otto Wolff* and *E. Cooper Shapley*, for appellee, were not heard, but argued in their printed brief: The privilege conferred by the license is personal, and does not go to the personal representatives. It cannot be transferred except by the method pursued in this case. It ends with the life of the license, and is not an asset of his estate : Blumenthal's Petition, 125 Pa. 412.

PER CURIAM, April 3, 1899 :

We find nothing in either of the three specifications of error to justify a reversal or modification of the decree from which this appeal was taken.

The learned court was clearly right in refusing to surcharge

the administratrix with "the full amount received by her for the transfer of the license, stock and fixtures." The extent to which she was justly surchargeable on account of said transfer was a question of fact for the court below, and it appears to have been determined on correct principles. We are by no means convinced that there was any error in ascertaining the amount of the surcharge.

Decree affirmed and appeal dismissed at appellants' costs.