Ryan Estate.

Argued May 28, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Philip Richman,* with him *Frank I. Ginsburg,* for surviving spouse, appellant.

*Raymond E. Larson,* for guardian of minor, appellee.

*Francis J. Gafford,* Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, and *Elgin E. Weest,* for Commonwealth of Pennsylvania, Department of Revenue, appellee.

OPINION BY MR. JUSTICE ARNOLD, October 5, 1953:

The surviving spouse of Joseph M. Ryan, deceased, both as an individual and as administratrix of her husband's estate, appeals from an adjudication of the orphans' court: (a) entering a surcharge in the sum of $10,000 which she received from the sale of a liquor license issued to her, being a transfer from place to place and from person to person; (b) subjecting the estate to transfer inheritance taxes on the Commonwealth's appraisement of $5,000 on said liquor license; and (c) surcharging the sum of $1,568 for a beer cool-

ing system alleged to be owned by the surviving spouse individually.

I. The decedent was the owner of a liquor license. At his death in 1950 the liquor license was transferred to his surviving spouse under the provisions of §408(c) of the Pennsylvania Liquor Control Act of 1937, P. L. 1762, as amended,[1] which provides, inter alia: ". . . In the case of the death of a licensee, the board may transfer the license to the surviving spouse or personal representative or to a person designated by him." In *Pichler v. Snavely,* 366 Pa. 568, 569, 79 A. 2d 227, this Court, speaking through Justice BELL, said: "The law is well settled that a liquor license is not a property right, but only a purely personal privilege for a specific limited time, which is subject to termination by the Liquor Control Board for cause *and which, in any event, terminates with the licensee's life.* A liquor license or the privilege to sell liquors for a specified time, although often very valuable, is not assignable, (as that term is generally understood) nor does it go to the personal representatives or become an asset of the holder's estate in case of death [citing cases]." (Italics supplied). The administratrix made an application to the Liquor Control Board for the transfer of such license to her as an individual. We deem it of no importance that this application was signed by her as administratrix of her husband's estate, since the Act expressly provides that the surviving spouse may have the license transferred to her, and this right would not have been abrogated had another individual been appointed administrator.

Since upon the death of the licensee the license was, in fact, terminated, and since under the terms of the Pennsylvania Liquor Control Act the Board had power

---

[1] Reenacted by the Liquor Code of 1951, 47 PS §4-468.

to grant a new license to the surviving spouse—as it did—it follows that said new license was not an asset of the estate. It did not become an asset of the estate merely because the new licensee mingled certain assets of the decedent's estate with her own property in the conduct of the licensed place. To the extent that the administratrix used the funds of the estate for her own benefit in connection with the operation of the license, she may be surcharged.

When she later sold and transferred her own individual liquor license to Jones & Morrissey—a transfer not merely from person to person but from place to place—the situation was not altered, and the sum which she received from the transfer was not and cannot become an asset of the estate.

The lower court relied on the case of *Aschenbach v. Carey,* 224 Pa. 303, 73 A. 435, but that case is clearly distinguishable. There a decedent held a liquor license. The brother of the decedent became administrator of the estate and obtained a transfer of the license to him. In the appraisement the administrator charged himself with the license as well as the stock and fixtures of the place of business, and paid for the transfer and reissuances of the license out of estate funds. He deposited all sums received from the place of business in his account as administrator. Under an order of the orphans' court the administrator was authorized to sell the license, which he did. As administrator he also sold the stock and fixtures to the same person who purchased the license, who had acquired the lease of the premises. By attachment-execution a creditor of the brother who was the administrator sought to require the purchaser of the license to pay a judgment obtained against him. The Supreme Court held that the license increased the value of the good will of the premises, and that the transfer of the license by the

administrator was done for the benefit of the estate and was entirely above-board. In other words, the administrator in the *Aschenbach* case purposely treated the license as an asset of the estate and enhanced the value of the estate by the transfer to the purchaser. He never claimed the license to be his own, although it was issued to him. In the case at bar the license was issued to the surviving spouse, who always held it as hers and never accounted for it as an asset of the estate. She sold her license so that it was transferred from place to place, thus not enhancing the value of the estate as in the *Aschenbach* case. The principal difference between the *Aschenbach* case and the instant matter is that in the *Aschenbach* case the individual who held the license used it for the benefit of the estate. In the instant case the surviving spouse used the assets of the estate for her own benefit as the owner of the license.

II.   The Commonwealth of Pennsylvania appraised at $5,000 the liquor license which the surviving spouse had obtained from the Liquor Control Board. The claim for inheritance tax was allowed by the court below. For the reasons heretofore stated, said license so issued under the Pennsylvania Liquor Control Act to the surviving spouse was her individual property. In addition, it was not "property of which the decedent was seized or possessed at the time of his death" (under the Act of 1919, 72 PS §2301, as amended) : *McCandless Estate,* 374 Pa. 551, 97 A. 2d 807. Since the decedent's license terminated at his death, and was not property of which he was seized or possessed at the time of his death, it is somewhat difficult to understand at what point of time it could have become an asset of the estate.

III.   The third question raised on this appeal is as to certain beer cooling equipment of the value of

$1,568, concerning which the court entered a surcharge. The surviving spouse claims that this was purchased by her with her own money and was not a part of the estate. The court made no specific findings on the ownership of the beer cooling system, and since this involves the credibility of witnesses, we do not pass on this question.

We therefore remit the record to the court below with directions: (a) to eliminate the surcharge for funds derived from the transfer of the liquor license from the surviving spouse; (b) to disallow the claim of the Commonwealth of Pennsylvania for inheritance taxes on the appraised value of the decedent's liquor license; (c) to make findings and adjudicate any surcharges of the administratrix for estate monies used by her in connection with the operation of her liquor license; and lastly (d) to make findings and adjudicate whether the beer cooling system for which the surviving spouse received $1,568 was the property of the surviving spouse or a part of the estate.

The orders and decrees of the orphans' court are reversed, with directions, at the cost of the respective appellees.

----

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

This appeal involves a dispute between appellant, the administratrix and surviving spouse of the decedent, and appellee, trustee for the minor daughter of the decedent by a prior marriage. Appellant, who has since remarried, had married the decedent less than two years prior to his death. During this period decedent operated a restaurant and retail liquor business, holding the liquor license in his sole name. Although appellant in her application for letters of administration certified under oath that the decedent's

minor daughter had an interest in the estate which consisted principally of the business, when she as administratrix applied for transfer of the liquor license to herself individually, she certified under oath that she was the sole person primarily interested in the business. Appellant claimed that she transferred all of the assets of the business to herself individually; however the auditing judge found otherwise. She operated the business and retained the premises under the decedent's lease for a period of approximately five months and for three months thereafter under her own lease. During the time she operated the business, appellant did not charge herself with these assets. When the inventory was filed ten months after the decedent's death, appellant then for the first time charged herself with the *physical* assets. During the eight month period when the business was operated by her, all expenses were paid out of the funds of the estate. In August, 1951 she, in her individual capacity, sold the business, including the fixtures, equipment and assignment of the liquor license, for $11,820. On August 24, 1951 appellant filed an account showing total assets of $4,001.73, which included cash in the approximate amount of $3,200 and the physical assets of the business at a value of $800, but did not include the amount realized from the transfer of the liquor license. After payment of debts and administration expenses the ballance for distribution was $259.33. The issue is whether the amount received for the sale of the business over and above the value of the physical assets, which amount ($11,020) represents the price received by appellant for the assignment of the right to apply for a liquor license, should be considered part of the estate of the decedent, Joseph M. Ryan.

It is clear that if there was a property right attached to the liquor license, then that right passed to

those entitled under the intestate laws. If there was no property right attached to it and it was solely a license, then nothing passed into the estate. Although the privilege of selling liquor is designated a "license", such designation will not limit its legal interpretation if the privilege includes attributes of a property right.

"License" is defined as "An authorization by the government to an individual to do certain acts, or carry on a certain business.": Cyclopedic Law Dictionary, 3rd Ed. "License" as thus defined connotes a personal privilege peculiar to an individual and as such it of course could not be assigned by the individual and could not survive upon his death. As between the Commonwealth and a licensee under the Pennsylvania Liquor Control Act, the relationship is accurately defined as that of licensor and licensee. The license can be revoked by the Pennsylvania Liquor Control Board without compensation and the licensee cannot be heard to complain that this constitutes a taking of his property: *Spankard's Liquor License Case*, 138 Pa. Superior Ct. 251, 259, 10 A. 2d 899. However, Section 408 (c) of the Pennsylvania Liquor Control Act of 1937, P. L. 1762[1] permits a liquor license to be transferred upon the application of the licensee and further provides that upon the death of the licensee ". . . the board may transfer the license to the surviving spouse or personal representative or to a person designated by such representative.". Since under the Act the privilege afforded to the licensee by the Commonwealth can be transferred to another, it is apparent that this privilege includes attributes of personal property.

It has been stated in *Pichler v. Snavely*, 366 Pa. 568, 79 A. 2d 227, "The law is well settled that a liquor license is not a property right, but only a purely per-

---

[1] Reenacted by the Liquor Code of 1951, 47 P.S. §4-468 (a).

sonal privilege for a specific limited time, which is subject to termination by the Liquor Control Board for cause and which, in any event, terminates with the licensee's life. A liquor license or the privilege to sell liquors for a specified time, although often very valuable, is not assignable, (as that term is generally understood) nor does it go to the personal representatives or become an asset of the holder's estate in case of death: . . .", citing *Grimm's Estate*, 181 Pa. 233, 236, 37 A. 403; *Blumenthal's Petition*, 125 Pa. 412, 415, 18 A. 395; *Buck's Est.*, 185 Pa. 57, 60, 39 A. 821; *Mueller's Est.*, 190 Pa. 601, 603, 42 A. 1021; *Commonwealth v. Cochran Post No. 251*, 350 Pa. 111, 119, 38 A. 2d 250; *Spankard's Liquor License Case*, 138 Pa. Superior Ct. 251, 259, 10 A. 2d 899. In a footnote to this paragraph it was stated: "We are not unmindful that a liquor license may be transferred in accordance with and subject to the terms and provisions of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, 47 P.S. §744-1, et seq.; and that it has been the practice of the present Liquor Control Board to transfer the liquor license of a deceased licensee to his personal representatives or wife, upon compliance with the Board's regulations.". That case was a suit in assumpsit to recover damages for breach of a contract to transfer a liquor license. While the case held that assumpsit did not lie for breach of such a contract because of the speculative nature of the damages, it was there stated that equity will grant specific performance of a contract to sell or assign a liquor license and many supporting authorities were cited. It is fundamental that equity (with few exceptions not here pertinent) acts only to protect *property rights*. Therefore the *Pichler* case is authority for the proposition that as between parties to a contract to sell or assign a liquor license, the subject matter of that contract

is a property right. This property right exists only as between the parties to the contract, i.e. licensee and any other party to whom the privilege of applying for a license to sell liquor is desirable enough to warrant payment of a substantial sum of money therefor. The nature of what is bargained for in such a contract was alluded to in *Germantown Brewing Co. v. Booth,* 162 Pa. 100, 29 A. 386, where this Court said at p. 104: ". . . It matters not in what form the consent of the licensee is given. An assignment of the license is nothing more than his expression of consent that the license may be transferred to his assignee, 'by the authority granting the same.' . . . All that the assignee acquires by it is the privilege of applying for the transfer to the court having jurisdiction to make it.". See also 30 Am. Jur., §141, p. 329. Patently the transferee pays for and receives the opportunity of obtaining the existing license, especially valuable under the quota system. The above quoted language in *Pichler v. Snavely,* supra, to the effect that a liquor license is not a property right is based upon statements first made by this Court in *Petition of Wallace G. Raudenbusch,* 120 Pa. 328, 14 A. 148, and *Petition of Babetta Blumenthal,* 125 Pa. 412, 18 A. 395. In both of those cases the issue was between the Commonwealth represented by the Court of Quarter Sessions (which under the statute then in effect issued and transferred liquor licenses) and the licensee, and as previously has been said, in such instance the privilege of selling liquor is properly defined as a license. *Commonwealth v. James J. Cochran Post No. 251 of the V. F. W. of U. S. et al.,* 350 Pa. 111, 38 A. 2d 250, and *Spankard's Liquor License Case,* supra, both of which were cited in *Pichler v. Snavely,* supra, also presented issues between the licensee and the Commonwealth and the same reasoning applies.

In *In re Estate of Victor B. Grimm, deceased. Appeals of Peter Monroe, Executor of Victor B. Grimm, deceased, and of Caroline H. Grimm,* 181 Pa. 233, 37 A. 403, cited in *Pichler v. Snavely,* supra, a decedent who had been engaged in a retail liquor business left all his property to his widow, but appointed another person as executor. The widow purchased from the executor the fixtures and stock at a fair value. She then leased the property in which the business had been conducted and thereafter obtained a transfer of the liquor license to herself. Three months later the lease, good will, fixtures and stock then on hand were sold by her for $3,000 and on her petition the license was transferred to the purchaser. The estate was insolvent and creditors objected to her right to retain this sum. The orphans' court surcharged the executor with $3,000, the amount received by the widow upon the sale, on the ground that the business had a probable value beyond the value of the stock and fixtures depending upon the contingency of the transfer of the license. In reversing such conclusion this Court held that the surcharging of the executor was based upon an erroneous assumption that he had control of the business, and that there may have been a purchaser who would have paid a higher price if assured that the license would have been transferred to him, and added that there was not a word of proof that there was any such purchaser. At p. 236 this Court said: ". . . If some one willing to take the chance of procuring the lease of the house and a transfer of the license had offered more for the stock and fixtures than the price at which they were sold by him, or if there had been evidence that by diligence on his part such a person could have been found, there would have been reason for surcharging him. It is not pretended that there was any such evidence, and the finding of the

auditing judge rests only upon unwarranted conclusions drawn from purely imaginary conditions.". The decision in that case is therefore based upon failure of proof and not on any abstract concept that no property right passes to the estate of a decedent who held a liquor license during his lifetime.

In *In re Estate of Sylvester B. Buck, deceased. Appeal of Louis J. L. Buck,* 185 Pa. 57, 39 A. 821, cited in *Pichler v. Snavely,* supra, the executor was surcharged by the orphans' court for the value of the unexpired term of the lease and good will of a saloon plus the opportunity of procuring transfer of the license which the accountant had appropriated to himself. The Court reasserted the principle that a license to sell liquor is a personal privilege, but in sustaining the order of the orphans' court added significantly (p. 60) : ". . . But the fact that a license had been granted to sell liquor at a particular place may increase the value of that which the executor or administrator may have to sell. On the hearing of an application for a retail license the court considers the public necessity of the place as well as the personal fitness of the applicant, and the granting of a license is the finding that the place in its location and appointments is a suitable place for the sale of liquor. The opportunity to secure a transfer of the license and a renewal at the end of the year may materially affect the value of the fixtures, good will and unexpired term of the lease. When this is shown to be the case, and the accountant has failed in the performance of a plain duty, there is ground for surcharge.".

In *In re Estate of Julius Mueller, deceased. Appeal of Louisa Mueller,* 190 Pa. 601, 42 A. 1021, also cited in *Pichler v. Snavely,* supra, the facts were very similar to those in the instant case. There it was sought to charge a widow who was also the executrix

of her deceased husband's estate with the value of the unexpired lease of the saloon which decedent had operated and for which operation he had a liquor license. The surcharge was sustained by this Court in a per curiam opinion which adopted the opinion of Judge PENROSE in which he stated at p. 603: ". . . If the occupancy of the licensee is under a lease having some time to run, the unexpired term, in case of his death, is an asset of his estate, of which good-will and the opportunity of obtaining a transfer or grant of a license are inseparable incidents. No executor or person acting in a fiduciary capacity is permitted to appropriate to his individual benefit any profit or advantage derived, directly or indirectly, from his connection with the trust estate, even if it would be lost altogether if he did not receive it. This is an elementary principle of equity: Keech v. Sandford, 1 Lead. Cas. in Eq. 48; Davoue v. Fanning, 2 Johns. Ch. 252; In re Heager's Executors, 15 S. & R. 66; Johnson's Appeal, 115 Pa. 129; and if such a person could find a purchaser for an unexpired license, he would be required to account for what he received, even though the purchaser acquired no right by reason of the sale. Nor can an executor who is also legatee sever the license from the unexpired term to which it is incident, and thus prejudice the value of the latter as an asset, in order to gain some advantage to himself as legatee; his rights as legatee do not begin until he has fully performed his duties as executor, and his allegiance in the first instance is to the creditors of the estate.". To show the distinction between that case and *Grimm's Estate,* supra, the Court stated at p. 604: "Here the widow of the decedent is herself the executrix, and her appropriation to her own use has been of the unexpired term as well as its incidental right to apply for a continuance of the license, without which

its value would be greatly diminished if not entirely destroyed. The evidence fully justifies the finding of the auditing judge as to the value of the asset thus withdrawn from the decedent's creditors; . . .". This statement could be made with equal force in the instant case, as is indicated by the following excerpt from the opinion of the auditing judge: "It is the opinion of the court that when Effie R. Meissner continued for sometime to operate the restaurant business of the decedent *as administratrix of her husband's estate,* using the funds on deposit in a bank account in her name *as administratrix,* the stock of liquors, fixtures and other equipment of the decedent's business, she acted in a fiduciary capacity (as administratrix). In fact, her testimony is all to this effect, notwithstanding her claim that she purchased the restaurant business in her individual capacity from the estate which is entirely unsupported by competent evidence. It is admitted that the liquor license, although transferred to her individual name, was used in the conduct of this business by her *as administratrix.* Although she testified that the business was a losing proposition notwithstanding all of her efforts to salvage it (for the estate) it would appear that the continued existence and operation of the business was an essential factor in the securing of a purchaser of the liquor license.". (Emphasis by the auditing judge).

Thus all of the above cases have consistently held that the value of the opportunity of obtaining transfer of a liquor license is an asset of the estate and upon proof of the fact that the personal representative has not obtained a fair value for that asset, a surcharge is proper. All of these cases also make the statement and recognize the rule that a license per se is not an asset of the estate of the licensee. There can be no quarrel with that rule. The license itself does not pass

to his estate. However, the valuable incident of the right to apply for a new license which the Board is authorized to grant does pass under the Liquor Control Act of 1937 to the surviving spouse or the personal representative.[2] Therefore, to the extent of the value of the right to apply for a new license in the name of the surviving spouse or the personal representative and the consequent right of sale and transfer, the estate is enhanced.

The simple facts are that as a result of the death of Joseph M. Ryan intestate, his widow received $11,020 for the assignment of the right to apply for the liquor license, and will receive half of the balance remaining for distribution, or an additional $129.66, making a total of $11,149.66, while the minor daughter of the decedent, who is entitled under the intestate law to receive half of her father's estate, will receive only $129.67. Such a distribution of the assets of an intestate decedent is so palpably inequitable that it is inconceivable that the Legislature intended such a result. A fair interpretation of the legislative intent in permitting the Liquor Control Board to *immediately* transfer the license to the surviving spouse or personal representative of a licensee (or the person designated by the latter) is to assure that the business will continue until it is disposed of during the settlement of his estate, thus avoiding or minimizing the loss if the business is interrupted because of no named licensee to conduct it. Clearly the Liquor Control Act is not a statute of distribution and does not purport in title or text to dispose of any asset of a decedent's estate. If a license is initially issued under the provision in question to the personal representative of a decedent, he must realize upon and account for the

---

[2] In effect at the time of the decedent's death.

value of the right to receive and assign such license. The same is true if the license is initially issued to the surviving spouse. Whether he or she subsequently transfers or retains it, the spouse must account to the estate for the valuable right which is thus acquired by him or her, as the case may be. Any other construction of the statute leads to the possibility, indeed, likelihood, of the unjust result manifest in the present case if the lower court is reversed and the widow unconscionably allowed to deprive the daughter of the decedent of the small inheritance to which in right and justice she is entitled.

The Liquor Control Act of 1937, supra, provides for the automatic termination of a license upon the insolvency or bankruptcy of the licensee and further provides: ". . . Thereafter, no license shall be issued by the board for the premises wherein said license was conducted to any assignee, committee, trustee, receiver, or successor of such licensee, until a hearing has been held by the board as in the case of a new application for license. . .".[3] This is very different from the provision here in issue which allows the Board to immediately transfer the license to the surviving spouse or personal representative. It is interesting to note that prior to the time that the transfer was restricted upon the insolvency or bankruptcy of the licensee, the right to have the license transferred was regarded as an asset of a bankrupt's estate. In *In re Becker*, 98 F. 407 (Dist. Ct., Eastern Dist. of Pa.) the Court stated: "Whatever may be the accurate description of a license to sell intoxicating liquor in Pennsylvania,— whether it be a personal privilege, merely, or a personal privilege and something more,—this much, at least, is certain: it has a money value, varying in dif-

---

[3] Reenacted by the Liquor Code of 1951, 47 P.S. §4-468 (b).

ferent places, and for different reasons. The statutes of the state permit a license to be transferred, subject to the approval of the court of quarter sessions; and I regard it, therefore, as so far property, 'which prior to the filing of the petition [a bankrupt] could by any means have transferred,' that the right to sell it (I do not say the right to exercise it) will pass to the trustee. No doubt, there is a clearly visible distinction between a right to property and a mere personal privilege; but I see no abstract reason why some personal privileges may not also come to have qualities belonging usually to property rights alone,—such, for example, as capacity to be transferred, and sufficient attractiveness to make other persons willing to pay money for the opportunity to acquire them. Where, as in the case of a license to sell liquor, these qualities are found to exist in fact, it seems to me that the privilege has ceased to be a privilege merely, and has become, in some sense and in some degree, property also. . . .". This decision of the District Court recognizes that the right to assign the privilege of applying for a transfer is a valuable property right and is in accordance with the rule that should be applied in the instant case.

Indeed the case is ruled by the decision of this Court in *Aschenbach v. Carey*, 224 Pa. 303, 73 A. 435, where there was a suit by a judgment creditor of the administrator to recover a debt owing by the latter individually. The decedent was the proprietor of a saloon and held a retail liquor license. In the inventory filed by the administrator there was included the value of the license, stock and fixtures. In that case, as in the instant case, the administrator procured the transfer of the license to himself and, as here, used the funds of the estate to run the business. It was held that the proceeds of the sale were assets of the

estate. It is true, as stated in the majority opinion in the instant case, that the administrator in the *Aschenbach* case treated the liquor license and the right to have it transferred as an asset of the estate. However, the following language of the majority is in my opinion without justification: ". . . The principal difference between the *Aschenbach* case and the instant matter is that in the *Aschenbach* case the individual who held the license used it for the benefit of the estate. In the instant case the surviving spouse used the assets of the estate for her own benefit as the owner of the license.". The necessary import of this language is that it is within the power of the personal representative to determine whether or not the right to transfer a liquor license is an asset of the estate. Such determination is a question of law and not a matter which may be left to the arbitrary decision of the personal representative any more than the latter may be permitted to arbitrarily decide whether any other asset of which a decedent dies seized or possessed is or is not an asset of the estate. The *Aschenbach* case is based upon the decisions of this Court in *Buck's Estate,* supra, and *Mueller's Estate,* supra, and the fact that the administrator treated the right to transfer the liquor license as an asset of the estate was only incidental to the decision. However, even if the manner in which the administratrix in the present case treated the right to transfer the liquor license and the other assets of the estate were of the importance attributed to it by the majority opinion, the auditing judge found, as previously quoted, that the administratrix, as in the *Aschenbach* case, operated the business and used the assets in her fiduciary capacity, not for her individual benefit.

Every approach to the determination of this case leads to the inescapable conclusion that the value of

the right to transfer the liquor license in the instant case, which was established by the subsequent sale to be $11,820 less the inventory value of the physical assets, must be considered a part of the estate of the decedent in which his minor daughter is entitled to a one-half share. It follows that the Commonwealth is entitled to the inheritance tax thereon, at its prior appraisal of $5,000.

Mr. Chief Justice HORACE STERN and Mr. Justice JONES join in this dissenting opinion.