Kosco *v.* Hachmeister, Inc., Appellant.

[redacted]

Argued March 24, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*John G. Koedel*, with him *Alice D. Tobias,* for appellants.

*John A. Metz, Jr.,* with him *David Friedman, Guy L. Warman, Joseph B. Mitinger,* and *Metz, Cook, Hanna & Kelly,* for appellees.

OPINION BY MR. JUSTICE BOK, June 30, 1959:

The basic question in this case has once been resolved, in *Lugin v. Dobson & Hachmeister Co.,* 376 Pa. 620 (1954), when a decree awarding damages to the plaintiff was affirmed.

The property of the present plaintiff Drwinga is next to that of Lugin, and Kosco's lots are the fourth and fifth away on the other side. Beyond a reminder, it is unnecessary to repeat all of the facts. There is a group of homes in McKees Rocks, near Pittsburgh, set on a steep hillside between Stowe Avenue and Island Avenue. Downhill and across Island Avenue is the Hachmeister property, from which Dobson, its contractor, removed ten thousand tons of earth in a grading operation during December, 1949.

The Chancellor found that within a month after the excavation an earth movement began toward the excavation along the face of the Hachmeister embankment, affecting not only the bed and sidewalks of Island Avenue but the plaintiffs' properties as well. Their houses so cracked and buckled that they had to abandon them in 1952. The Chancellor also found that the movement was triggered by the defendants' negligently removing lateral support from the hillside, with the result that a small landslide occurred. The real issue was whether the causation was a landslide or a creep, which is the slow and imperceptible downhill movement of land responding, as it does on any hillside in the world, to the force of gravity: creep is not great enough to damage structures built on the land.

Experts testified for both sides. The evidence given by Doctors Gotolski and Ridge, for the plaintiffs, cov-

ered about 1400 pages of the original record and 230 pages of the printed record. These men were examined and cross-examined on every conceivable phase of the case: the location of the heel and toe of the earth movement, the depth of the slide plane, the rate of creep, the effect of pore water pressure and of precipitation, the kind of soil and detritus, the cause of upward buckling, the geological formation of the area, and the like. Both men said flatly that the damage to the properties of the plaintiffs was caused by a landslide let loose by the excavation on the Hachmeister land.

Defendants argue that the physical facts are incontrovertible but this cannot be so when they must be established by one of two opposing versions. Only when the basic facts are the same under both versions can they be said to be beyond controversy. The fact that the Kosco houses buckled upward, which defendants say could not happen in a landslide, was explained by Dr. Ridge's testimony that there was a series of slides higher up the hill set off by the first slide at the excavation: one of these might well ride over lower ground and cause an upthrust.

While the earth movement, cracked walls, upthrust floors, etc. are immutable facts in the sense that they happened and were plainly to be seen, their explanation lies in science rather than in lay experience and depends on oral testimony by experts. "No fact based on oral testimony ever possesses the character of legal incontrovertibility until it receives the imprimatur of a jury's acceptance": *Majewski v. Lempka,* 321 Pa. 369, 183 A. 777 (1936); *Fisher v. Hill,* 362 Pa. 286, 66 A. 2d 275 (1949).

The findings of the Chancellor, based on ample evidence and confirmed by the Court en banc, have the weight of a jury's verdict: *De Joseph v. Zambelli,* 392

Pa. 24, 139 A. 2d 644 (1958); *Willwerth v. Dunlap,* 391 Pa. 12, 137 A. 2d 269 (1958).

Aside from liability, the only questions raised have to do with certain items of damage in the awards to the plaintiff Kosco. There is no dispute over the amounts or their support by competent evidence.

John and Mary Kosco owned the fee to 1219-1221 Island Avenue and the hotel built on the property. Carl M. Kosco, their son, was tenant of this property under a lease running from May, 1949, to April 30, 1954: he held a restaurant liquor license and operated the hotel, restaurant, and bar.

John and Mary Kosco died after suit was begun, and it devolved on Carl M. Kosco as Executor of his father's will. Hence this plaintiff represents the claim of the owners as their Executor and his own claim as tenant.

Defendants do not question the propriety of the Estate's claim for destruction of the building. They dispute certain other items on the ground that they were not specially pleaded, but we regard them as direct and general elements of damage and hence recoverable, under *Parsons Trading Co. v. Dohan,* 312 Pa. 464, 167 A. 310 (1933), and *Klauder v. Cregar,* 327 Pa. 1, 192 A. 667 (1937).

The value of the building at the time the slide began was the proper measure of damage, rather than the difference in value before and after, *Durante v. Alba,* 266 Pa. 444, 109 A. 796 (1920); *Jones v. Monroe Electric Co.,* 350 Pa. 539, 39 A. 2d 569 (1944); *Capri v. Jafolla & Mark,* 119 Pa. Superior Ct. 563, 181 A. 448 (1935). This is the proper rule when the only damage is to the buildings and the realty has not been permanently injured or destroyed.

The Chancellor found that neither the land nor the building has any fair market value at present, but he

did not find that the realty had been permanently injured or destroyed. He also found that the value of the property when the slide began in 1949 was $30,000, of which $27,500 represented the value of the building separate from the land. He then awarded $30,000 plus the demolition charges to Carl M. Kosco, as Executor, but under the findings and the rule in the *Durante* case only the value of the building should have been allowed, or $27,500, plus the demolition charges. The award must therefore be reduced by $2500.

In his capacity as tenant, Carl M. Kosco is entitled to the value of his destroyed fixtures in the hotel and the value of his license, both of which are the direct result of the destruction of the building.

Defendants do not dispute the causation but argue, citing *Pichler v. Snavely*, 366 Pa. 568, 79 A. 2d 227 (1951), that a liquor license is not a property right but only a personal privilege. This may be admitted, but if a man has a privilege and is prevented from exercising it by another's fault, he loses value during the running period of the privilege. The cited case says that the privilege is "very often valuable", and this is also reflected in *Estate of Buck*, 185 Pa. 57, 39 A. 821 (1898); *Aschenbach v. Carey*, 224 Pa. 303, 73 A. 435 (1909); *Ryan Estate*, 375 Pa. 42, 99 A. 2d 562 (1953); *O'Neill v. Keegan*, 376 Pa. 606, 103 A. 2d 909 (1954); *Savitsky v. Parulis*, 378 Pa. 140, 106 A. 2d 580 (1954). The fact that a license may not be assigned without the permission of the State Liquor Board and that it does not become an asset of a licensee's estate when he dies merely restricts the market but does not prevent the privilege from having value.

Appellants challenge the award of $680, representing two years' fees to keep the liquor license alive until the end of plaintiff's lease. Since he also asks for profits based on the past experience of the business,

it is fair to say that since the profits could not have been made without a live license, the cost of keeping up the license must have been included as an expense in calculating the profits. It occurs to us to say in this connection that the value of the license is not in similar case, as it is an asset rather than a charge. It could have been transformed into cash before the business was destroyed, but not thereafter: there was a finding that there was no other location in the township to which the license could have been transferred. Hence plaintiff lost the value of the asset that made it possible for him to earn, and it was an intrinsic value, not a cash investment. To allow the fees, however, would be a duplication and hence the award must be reduced by $680.00.

Appellants have not included plaintiff's claim for lost profits in their statement of questions and hence do not contest this item. They were, however, properly allowed: *Commonwealth Trust Co. v. Hachmeister Lind Co.*, 320 Pa. 233, 181 A. 787 (1935); *Offensend v. Atlantic Ref. Co.*, 322 Pa. 399, 185 A. 745 (1936); *Ashcraft v. Hussey & Co.*, 359 Pa. 129, 58 A. 2d 170 (1948); *Baxter v. Philadelphia & Reading Ry. Co.*, 264 Pa. 467, 107 A. 881 (1919); *Koren v. George*, 159 Pa. Superior Ct. 182, 48 A. 2d 139 (1946).

Appellants' final point is that plaintiff violated Regulation 109.05 of the Pennsylvania Liquor Control Board, which provides: "No individual holding a retail liquor license in his own name is permitted to be employed at or engaged in any other business." It was undisputed that plaintiff was employed at the Lewis Foundry & Machine Company between the time of the destruction of his hotel in June, 1952, and the end of his lease on April 30, 1954, and that he earned a substantial sum.

We doubt that the position of a man who had a license but could make no money with it because his place of business had been destroyed was within the reasonable contemplation of the Board in drawing this regulation. Aside from that, however, plaintiff's violation, whether technical or substantial, had nothing to do with his claim against the tortfeasor who destroyed his hotel. It was a matter between him and the Board and at the worst exposed him to administrative action such as suspension or revocation of his license. Such action could have affected the value of his license and the amount of his profits only by curtailing the effective life of the license, but there is no evidence that any such action was taken. *Edelbrew Brewery v. Weiss,* 170 Pa. Superior Ct. 34, 84 A. 2d 371 (1951) cooks no broth: it was an action in assumpsit in which the plaintiff sought to recover for an act made illegal by the Beverage License Law. The law denied a right of action to collect any claim for a sale on credit. Plaintiff sued on such a sale; defendant resisted on the ground that the claim had been expressly made illegal; and the court found for defendant. This is not the type of case before us.

The pertinent rule is that an illegal act does not invalidate a claim unless it must be resorted to in order to prove the claim. Plaintiff's case against defendant is not based upon an illegal transaction.

As this court said in *Phoenix Brewing Co. v. Rumbarger,* 181 Pa. 251, 37 A. 340 (1897) : "The objection that . . . plaintiff . . . had [not] complied with . . . the Act . . . requiring the branding of barrels and casks in which liquors are sold and the giving of a certificate to the purchaser is without force. The act does not prohibit the prosecution of the business when its provisions are not complied with, but provides a separate penalty for a failure to observe them."

In *Dales v. Muir*, 351 Pa. 187, 40 A. 2d 476 (1945), the court said: "Not every improper act done by a party to a litigation will preclude him from securing equitable relief. The maxim of clean hands is applicable only where the wrongdoing of the plaintiff directly affects the equitable relations subsisting between the parties."

See also *Rosenthal v. Ostrow*, 287 Pa. 87, 134 A. 384 (1926); *New York & Penna. Co. v. Cunard Coal Co.*, 286 Pa. 72, 132 A. 828 (1926); *Fishblate v. Fishblate*, 238 Pa. 450, 86 A. 469 (1913); *Conemaugh Brewing Co. v. Bennett*, 60 Pa. Superior Ct. 543 (1915).

The decree as to plaintiff Helen Drwinga in appeals Nos. 44 and 46 is affirmed.

The decree as to plaintiff Carl M. Kosco, Executor of the Estate of John Kosco, deceased, in appeals Nos. 43 and 45, is modified by reducing the award by $2500 to $30,186.17, and as so modified, it is affirmed.

The decree as to plaintiff Carl M. Kosco in appeals Nos. 43 and 45, is modified by reducing the award by $680 to $18,716.80, and as so modified it is affirmed.

Costs to be paid by appellants.