**ODETTE'S, INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, BUREAU OF STATE PARKS and Commonwealth of Pennsylvania, Department of Environmental Protection, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 6, 1997.

Decided July 1, 1997.

Paul A. Logan, King of Prussia, for petitioner.

Susan Wood, Harrisburg, for respondent, Dept. of Conservation and Natural Resources.

William Stanley Sneath, Conshohocken, for respondent, Dept. of Environmental Protection.

Before FRIEDMAN and FLAHERTY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Odette's, Inc. filed a complaint in equity in our original jurisdiction, seeking relief in the nature of an injunction, mandamus and declaratory judgment against the Commonwealth of Pennsylvania, Department of Conservation and Natural Resources, Bureau of State Parks (DCNR), and the Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) (collectively, Respondents). Currently before this court are Respondents' Preliminary Objections to Odette's complaint.

Odette's owns certain real property upon which it operates a restaurant; the property has been used for this purpose for over 200 years. Odette's property is bordered on the west by the Delaware Canal (Canal) and on the east by the Canal's outlet. All of the property adjoining Odette's property is owned by DCNR as part of the Delaware Canal State Park. In its complaint, Odette's averred that the deterioration of the Canal walls has resulted in damage to Odette's property and restaurant; Odette's seeks to compel Respondents to perform repairs and maintenance upon sections of the Canal in the area of Odette's property. According to Odette's, these duties are incumbent upon Respondents by action of the Dam Safety and Encroachments Act (Dam Act),[1] the Conservation of Natural Resources Act (CNRA),[2] Article I, § 27 of the Pennsylvania Constitution [3] and the common law duty of

---

1. Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§ 693.1—693.27.

2. Act of June 28, 1995, P.L. 89, *as amended*, 71 P.S. §§ 1340.101—1340.1103.

3. Article I, § 27 of the Pennsylvania Constitution provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the envi-

lateral support.[4]

■ We address Respondents' objections in the order of the Counts presented in Odette's pleadings.[5]

## (1) SHOULD COUNT I OF ODETTE'S COMPLAINT BE DISMISSED?

Count I of Odette's complaint requests injunctive relief to abate the unsafe and dangerous condition of the Canal walls. Odette's alleges that DCNR has failed to carry out its statutory obligation to maintain and repair the support walls of the Canal, as required by the Dam Act. Odette's further alleges that DCNR has a constitutional obligation to preserve the Canal, its outlet, its support walls and locks and Odette's, all of which are valuable, historic, and scenic landmarks. Finally, Odette's avers that the current condition of the Canal walls constitutes a dangerous condition and public nuisance.

### a. Does Odette's lack capacity to sue under the Dam Act?

DCNR first argues that, because the Dam Act does not contain a citizen suit provision, Odette's does not have standing to bring suit under this act.[6]

■ Odette's, on the other hand, contends that it does have standing to bring this action under the Dam Act,[7] which designates any unlawful conduct thereunder as a public nuisance per se, which "shall be restrained in the manner provided by law or equity for the abatement of public nuisances...." 32 P.S. § 693.19. According to Odette's, this authorizes the institution of a private suit in common law to abate nuisances resulting from failure to comply with the Dam Act. Under the common law, a citizen has standing to enjoin a public nuisance if its interest affected by the nuisance is distinguished from, and greater than, that of the general public. *See Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises,* 428 Pa. 350, 237 A.2d 342 (1968).[8] Odette's alleges that its interest in the restaurant, and the structural integrity of the land upon which it sits, separates Odette's from the general public and gives it the interest necessary to abate the public nuisance.

■ We must agree with Odette's. Although many sections of the Canal are in disrepair and may present a dangerous condition to the general public, Odette's has a greater interest than the general public regarding that section of the Canal and outlet which borders Odette's property. Odette's property has already experienced significant damage resulting from the condition of the Canal walls. This past, present and potential

---

ronment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all people.

4. The lateral support doctrine is the right to have land in its natural state supported by adjoining land. *Commonwealth v. Solley,* 384 Pa. 404, 121 A.2d 169 (1956).

5. Our scope of review is to determine whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993). We must accept as true all well pled allegations and material facts averred in the complaint as well as inferences reasonably deducible therefrom, and any doubt should be resolved in favor of the non-moving party. *Id.*

6. Other environmental acts do contain such citizen suit provisions. *See, e.g.,* the law commonly known as the Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1 –

760.2; the Air Pollution Control Act, Act of January 8, 1960, P.L. (1959) 2119, *as amended,* 35 P.S. §§ 4001—4106; the Hazardous Sites Cleanup Act, Act of October 18, 1988, P.L. 756, *as amended,* 35 P.S. §§ 6020.102—6020.1305; the Low-level Radioactive Waste Disposal Act, Act of February 9, 1988, P.L. 31, 35 P.S. §§ 7130.101—7130.905.

7. Odette's points out in its brief to this court that DCNR only challenges Odette's standing under the Dam Act, not Odette's standing to bring suit under the other legal theories put forth by Odette's.

8. In *Pennsylvania Society for the Prevention of Cruelty to Animals,* our supreme court stated that:

[i]t is also true that a public nuisance may be enjoined at the behest of a private citizen or group of citizens, if the latter, either in their property or civil rights, are specifically injured by the public nuisance over and above the injury suffered by the public generally.
*Id.* at 360, 237 A.2d at 348.

future damage separates Odette's interest from that of the general public sufficiently to give Odette's standing to bring an action to abate what Odette's alleges is a public nuisance.

### b. Is Odette's pleading legally insufficient?

DCNR next argues that Odette's pleading is insufficient because the Commonwealth is immune from the type of relief requested by Odette's and because Odette's has an adequate remedy at law. First, DCNR argues that the injunction sought by Odette's in Count I of Odette's pleading, calling for DCNR to take affirmative action, is barred by sovereign immunity. According to DCNR, the General Assembly has not waived sovereign immunity in the Dam Act.

■ On this issue, we return to the discussion in our opinion and order on Odette's Motion for Preliminary Injunction, filed March 25, 1997, in which we concluded that the Commonwealth's sovereign immunity had been waived with regard to the Dam Act by virtue of the Dam Act's inclusion of the Commonwealth within the definition of "person." Section 18(1) of the Dam Act declares it unlawful for any "person" to "violate or assist in the violation of any of the provisions of [the Dam Act] or any rules and regulations adopted [thereunder]." 32 P.S. § 693.18. Thus, we concluded that, because the Dam Act provides a remedy against any person who violates the act, and because section 3 of the Dam Act includes within the definition of "person" "any department, board, commission or authority of the Commonwealth," 32 P.S. § 693.3, the General Assembly intended for Commonwealth parties to be subject to suit under the Dam Act for violations of that act. Accordingly, sovereign immunity does not bar Odette's suit under the Dam Act.

### c. Does Odette's have an adequate remedy at law?

■ Finally, regarding Count I of Odette's pleading, DCNR last argues that, because Odette's has an adequate remedy at law, this court may not exercise equitable jurisdiction over the matter. DCNR points to other cases in which equity was denied because property owners could be monetarily compensated for damages.[9] DCNR argues that Odette's could be awarded damages as compensation for any damages to Odette's structures and business caused by the alleged condition of the Canal walls; thus, according to DCNR, Odette's has an adequate remedy at law, and equity may not lie here.

Odette's, however, argues that, because the current condition of the Canal walls threatens not only Odette's business, but also the existence of an irreplaceable historic landmark, monetary damages are not an adequate remedy. Odette's further declares that the condition of the walls poses a serious and significant risk to the safety, health and welfare of all those individuals visiting Odette's property. Because any remedy which might otherwise be available would not prevent the irreparable harm that will result if the current condition is not abated, Odette's argues that no adequate remedy at law exists.

We must agree that monetary damages and/or compensation and repair to damaged building structures after the fact will not sufficiently compensate Odette's for damages resulting from disrepair of the Canal walls. Odette's has sufficiently alleged that the building and property have historical significance which cannot be repaired or compensated for if destroyed. Accordingly, we deny DCNR's preliminary objections to Count I of Odette's complaint.

### (2) SHOULD COUNT II OF ODETTE'S COMPLAINT BE DISMISSED?

In Count II of its complaint, Odette's requests mandamus to compel DCNR to comply with its duties under the Dam Act. In this count, Odette's avers that DCNR has failed to fulfill its constitutional and statutory duties to maintain, repair and preserve the

---

9. *See Kosco v. Hachmeister,* 396 Pa. 288, 152 A.2d 673 (1959). In *Kosco,* a hotel was destroyed by a landslide and the court allowed damages to the owner and the tenant, including the value of the building, the destroyed fixtures in the hotel, the value of the liquor license and lost profits.

Delaware Canal and related facilities, including the Canal walls.

### a. Does Odette's lack capacity to sue under the Dam Act?

As it did with regard to Count I of Odette's complaint, DCNR contends that Odette's lacks standing to bring a mandamus action under the Dam Act where that act does not contain a citizen suit provision.

In addition to the arguments raised by DCNR and Odette's on the first count, Odette's adds that standing to maintain an action in mandamus to compel a public duty is not conferred by a citizen suit provision within an act; rather, the test for standing is whether the party seeking mandamus has an interest distinct from the public at large. *Douros v. Newtown Township,* 108 Pa. Cmwlth. 606, 530 A.2d 1002 (1987). For the previously discussed reasons, Odette's believes that its interest in the condition of the Canal walls is, in fact, distinct from that of the public at large. Accordingly, Odette's maintains that it has standing to bring a mandamus claim against DCNR.

■ We agree with Odette's that its interest in the repair, maintenance and preservation of the Canal walls in the area around Odette's is distinct from that of the public at large, giving Odette's standing to bring a mandamus claim against DCNR. Moreover, it is irrelevant that there is no specific citizen suit provision in the Dam Act which would provide a direct action against DCNR as an adjacent landowner. Here, Odette's did not bring this action as a *direct action* against DCNR as an adjacent landowner, but rather, as a *mandamus action* to compel the DCNR to comply with its duties under the Dam Act.

### b. Is Odette's pleading legally insufficient?

DCNR argues that Odette's is not entitled to mandamus because it has not alleged the existence of any ministerial or mandatory duty in DCNR. DCNR argues that the Dam Act's requirements that all persons covered by the Dam Act "monitor, operate and maintain the facility" in accordance with regulations, permits, and other DEP requirements and "take all necessary actions to protect life and property" are not ministerial in nature. To the contrary, DCNR asserts that these duties require the exercise of judgment and discretion, thereby precluding mandamus. Also, DCNR once again argues that Odette's has an adequate remedy at law, which precludes grant of mandamus.

■ Mandamus actions will only properly lie to compel duties which are mandatory in nature, not just ministerial acts. *County of Allegheny v. Commonwealth of Pennsylvania,* 507 Pa. 360, 490 A.2d 402 (1985). Odette's argues that, because the Dam Act imposes mandatory duties upon DCNR, these duties may be compelled through a mandamus action. Because the Dam Act imposes a *legal duty* upon DCNR to maintain the Canal, Odette's maintains that DCNR is without discretion with regard to performance of that duty [10] and stresses that it is not requesting that this court direct DCNR on *how* to fulfill its mandatory duties, but only to direct DCNR to *act in accordance with* its mandatory duties. Odette's also maintains that it has no adequate relief at law which would prevent grant of mandamus.

■ For the purposes of preliminary objections, we must agree with Odette's that we should not dismiss Count II of the complaint. The Dam Act does, indeed, impose a duty upon DCNR to maintain the Canal; thus, it is not improper to bring a claim in mandamus seeking to compel DCNR to comply with that duty. Whether DCNR has, in fact, complied with this duty is an issue to be decided in addressing the merits of the mandamus action itself, not in preliminary objec-

---

**10.** Odette's provides the definition of "legal duty":

> That which the law requires to be done or forborne to a determinate person or the public at large, correlative to a vested and coextensive right in such person or the public, and breach of which constitutes negligence. An obligation recognized by law which requires an actor to conform to a certain standard of conduct for the protection of others against unreasonable risk.

Black's Law Dictionary 893 (6th ed.1990) (citations omitted).

tions. Accordingly, DCNR's preliminary objections to Count II of Odette's complaint are overruled.

### (3) SHOULD COUNT III OF ODETTE'S COMPLAINT BE DISMISSED?

In Count III, Odette's requests mandamus to compel DCNR to comply with the statutory duties of CNRA. Odette's avers that the Delaware Canal and surrounding land is a park belonging to the Commonwealth; according to Odette's, DCNR has failed and refused to supervise, maintain, improve and/or preserve the Canal walls, which has injured Odette's, its patrons, and the public at large. Odette's requests that this court direct DCNR to maintain, improve, and preserve the Delaware Canal structure, including the Canal walls.

#### a. Is Odette's pleading legally insufficient?

DCNR argues that Count III is legally insufficient because, as it does in Count II, Odette's seeks to compel a discretionary act; according to DCNR, any duties DCNR may have under CNRA are clearly discretionary and not ministerial in nature.

Looking to the language of CNRA in which it states that "[DCNR] shall have the following powers and duties with respect to parks ... (1) to supervise, maintain, improve, regulate, police and preserve all parks belonging to the Commonwealth," 71 P.S. § 1340.303, Odette's contends that it is clear

that DCNR has a mandatory, not discretionary, duty to maintain, repair and protect the Canal walls. Again, Odette's argues that it is merely seeking to compel DCNR to act in accordance with its duties, not to direct the particular manner in which DCNR fulfills such duties.

■■■ Again, we must agree with Odette's that, because CNRA imposes a duty upon DCNR, mandamus is not inappropriate to compel DCNR to comply with that duty. Odette's has alleged that DCNR has not maintained, repaired and protected the Canal walls, allegations which, if true, would support a finding that DCNR has not, in fact, fulfilled its statutory duties.[11] Accordingly, we overrule DCNR's preliminary objections to Count III of Odette's complaint.

### (4) SHOULD COUNT IV OF ODETTE'S COMPLAINT BE DISMISSED?

■■■ In Count IV, Odette's requests mandamus to compel DEP to comply with its statutory duties under the Dam Act.[12] According to Odette's, under the Dam Act, DEP must provide for the regulation of water obstructions and encroachments and, whenever there is reasonable cause to suspect the existence of conditions adversely affecting the safety of a water obstruction or encroachment, must order the owner to conduct such investigations, tests and analyses as may be required to determine the continuing safety of the facility.[13] DEP can order

---

11. This issue, however, is not properly before us now; when the merits of the mandamus claim are addressed, we will then determine whether DCNR has complied with this duty and, if not, what actions we may direct DCNR to take in order to comply with the duty.

12. We note that, in the caption to Count IV, Odette's avers that DEP must comply with *CNRA;* however, in the body of Count IV, Odette's argues that DEP must comply with the *Dam Act.* Accordingly, we will assume that the caption is incorrect, and we will treat this Count as a Dam Act issue.

13. Section 14 of the Dam Act, 32 P.S. § 693.14, (emphasis added), imposes the following duties upon DEP:

(a) Whenever [DEP] finds there is reasonable cause to suspect the existence of conditions adversely affecting the safety of a dam, water

obstruction or encroachment, *[DEP] may order the owner to conduct such investigations, tests and analyses as may be required to determine the continuing safety of the facility.*
(b) *If [DEP] determines that any dam, water obstruction or encroachment is unsafe or adversely affects property* or the environment *or has not been properly* constructed, operated, *monitored or maintained in compliance with this act, it may order the owner of the facility to repair, alter, maintain or remove the facility or take such other action necessary to carry out the purposes of this act,* within such time as prescribed in the order.
(c) If:
  (1) the owner cannot be ascertained or found;
  (2) the owner refuses or fails to comply with an order issued pursuant to this section; or
  (3) the condition of the facility is so dangerous as to require immediate remedial action;

the owner to undertake actions necessary to comply with the Dam Act; if the condition is so dangerous as to require immediate remedial action, DEP is authorized to take such action and recover the costs from the owner. Odette's avers that DEP has failed and/or refused to ensure that DCNR, as a defined owner within the Dam Act, complies with the requirements of that act. In addition, Odette's contends that DEP has not taken any action on its own to correct DCNR's failures under the Dam Act. Accordingly, Odette's requests that this court direct DEP to regulate DCNR's compliance with the Dam Act.

### a. Does Count IV of Odette's complaint state a legally sufficient claim?

In its preliminary objection to this count of Odette's complaint, DEP, citing *Hanson v. Lower Frederick Township Board of Supervisors*, 667 A.2d 1221 (Pa.Cmwlth.1995), *appeal denied*, 547 Pa. 719, 688 A.2d 174 (1997), argues that mandamus is not available to compel a government agency to undertake any form of specific enforcement action under CNRA or the Dam Act.[14]

Odette's, on the other hand, argues that DEP has the absolute duty to enforce the provisions of the Dam Act. According to Odette's, the *act* of enforcement is not discre-

> [DEP] or its authorized agents *may* enter and conduct such investigations, tests and analyses or *take such corrective action as required to carry out the purposes of this act.* [DEP] thereafter may recover from the owner, in the name of the Commonwealth, the expenses incurred in taking such action, in the same manner as debts are recoverable by law.
>
> The purposes of the Dam Act are enumerated in section 2 of the Dam Act, 32 P.S. § 693.2 (emphasis added):
>
> (1) *Provide for the regulation of dams and reservoirs, water obstructions and encroachments in the Commonwealth, in order to protect the health, safety and welfare of the people and property.*
>
> (2) Assure proper planning, design, construction, maintenance, *monitoring* and supervision of dams and reservoirs, including such preventive measures as are necessary to provide an adequate margin of safety.
>
> (3) Protect the natural resources, environmental rights and values secured by the Pennsylvania Constitution and conserve the water quality, natural regime and carrying capacity of watercourses.

tionary for DEP, even though the *method* of enforcement may be so. Odette's maintains that, under the Dam Act, DEP has a duty to seek an injunction against DCNR to abate the condition of the Canal which is DCNR's property. Because Odette's believes that DEP has done *nothing* to enforce the Dam Act, Odette's contends that mandamus is appropriate to compel DEP to do *something.*

As we have already stated above regarding Odette's mandamus claim against DCNR, Odette's has alleged facts about DEP's lack of action which, if true, could support a finding that DEP has not complied with its statutory duties to enforce the provisions of the Dam Act. We note that, in addressing the preliminary objections, we are not addressing the merits of whether DEP actually complied with its duties; rather, taking Odette's allegations regarding DEP's actions or lack thereof as true, we must overrule DEP's preliminary objection to Count IV because we cannot say as a matter of law that no recovery is possible.

### (5) SHOULD COUNT V OF ODETTE'S COMPLAINT BE DISMISSED?

In Count V, Odette's requests mandamus to compel DEP to comply with its statutory duties under section 1904–A of the Administrative Code of 1929.[15] According to

> (4) *Assure proper planning, design, construction, maintenance and monitoring of water obstructions and encroachments,* in order to prevent unreasonable interference with waterflow and to protect navigation.
>
> Thus, it is clear that DEP has a duty under the Dam Act to investigate and correct unsafe conditions of structures covered by that act.

14. Contrary to DEP's assertions, we must conclude that *Hanson* is not relevant here. In *Hanson*, this court concluded that mandamus was not an appropriate means to compel the municipality to enforce a zoning law against a violative neighbor because the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101—11201, specifically provides a procedure by which an adjoining landowner can seek relief from a neighbor's violation of a zoning law.

15. Section 1904–A of the Administrative Code of 1929 places the following duties upon DEP:

> To investigate or examine dams, walls, ... embankments, ... and other water obstruc-

Odette's, under section 1904–A, DEP has the statutory duty to investigate, repair and/or cause to be repaired by order or injunctive relief walls, such as the support walls in issue, which are in an unsafe condition, and/or to otherwise ensure that the owners of such walls comply with all laws regarding the safety of such facilities. Odette's avers that DEP has failed to investigate or repair the Canal walls and has not undertaken any measures to ensure that DCNR, as owner of the walls, has complied with all laws, including, but not limited to, the Dam Act and the CNRA, regarding the safety of the walls.

**a. Is mandamus available to Odette's to compel Respondents to undertake any form of specific enforcement action under Section 1904–A of the Administrative Code of 1929?**

DEP argues, as it did against Count IV, that, because Odette's is requesting this court to compel DEP to perform discretionary, rather than ministerial acts, mandamus may not lie. DEP likens the situation presented here to the case of *Clear Vue Acres Homeowners Association v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 13 Pa.Cmwlth. 66, 317 A.2d 335 (1974), in which the plaintiffs brought suit in mandamus, seeking to compel the Department of Environmental Resources (DER) to bring legal action against a water company. In *Clear Vue,* we stated:

A review of the statutes cited by plaintiffs in their complaint reveals no duty by the defendants to commence legal action against those who may have failed to comply with a DER order. Commencement of such action is discretionary and "mandamus does not lie to compel the performance of discretionary acts except where

the exercise or non-exercise of discretion is arbitrary, fraudulent or based upon a mistaken view of the law."

*Id.* 317 A.2d at 336.

■ In *Clear Vue,* however, mandamus could not lie because the petitioner attempted to compel DER to perform a discretionary act by demanding DER to comply with its duty in a particular way; here, however, Odette's is demanding that DEP comply with its statutory duty but is not attempting to direct by what manner DEP does so. Thus, because DEP has a statutory duty and because Odette's is not attempting to compel a discretionary act, we cannot say as a matter of law that no recovery is possible and we must overrule DEP's preliminary objection to Count V of Odette's complaint.

**(6) SHOULD COUNT VI OF ODETTE'S COMPLAINT BE DISMISSED?**

In Count VI, Odette's requests declaratory judgment that it has an easement of necessity and a prescriptive easement over the bridge, South River Road and the parking lot area.

**a. Does this court have subject matter jurisdiction and is the pleading legally sufficient to allege a prima facie case of prescriptive easement?**

■ DCNR first argues that this count fails to allege an actual controversy.[16] According to DCNR, Odette's merely alleges that, since the 1970s, DCNR and Odette's have entered into leases for the use of the property that Odette's now alleges is subject to easements; a declaration that Odette's has such an easement would do nothing to resolve the controversy which has given rise to this lawsuit. DCNR also argues that this

tions, determine whether they are unsafe, need repair, alteration or change in their structure or location, or should be removed, notify owners to repair, alter or change the structure or location or remove the same, repair, alter or change the structure or location or remove the same in emergencies without notice and at the cost of the owners, and apply for injunctions to enforce compliance with or restrain the violation of the law in regard to the safety of dams, or the derogatory effect of walls, ... embankments, ... or other water obstructions....

Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 510–4(2).

16. The court may refuse to assume jurisdiction of an action for declaratory judgment where there is no actual controversy or where the judgment would not terminate the uncertainty or controversy giving rise to the proceeding. *County of Allegheny v. Commonwealth of Pennsylvania, Department of Public Welfare,* 53 Pa.Cmwlth. 318, 416 A.2d 1175 (1980), *affirmed,* 493 Pa. 624, 427 A.2d 649 (1981).

count of the pleading is legally insufficient because Odette's failed to allege a prima facie case of easement by prescription.[17] To establish a prescriptive easement, a plaintiff must prove that, for a period of 21 years, the use of the property was all of the following: (1) adverse; (2) open; (3) notorious; and (4) continuous and uninterrupted. *Burkett v. Smyder*, 369 Pa. Superior Ct. 519, 535 A.2d 671 (1988). According to DCNR, Odette's has neither alleged adverse use nor stated any facts which, if true, would lead to a conclusion of adverse use.

Odette's responds to both of DCNR's arguments at the same time, arguing that it has, indeed, set forth sufficient facts of an actual controversy regarding Odette's access to its property from River Road. Odette's avers that DCNR has taken actions which are inconsistent with Odette's easement, including requiring Odette's to execute temporary leases in order to continue to access the property. According to Odette's, a declaration of rights regarding Odette's easement over the access route and parking area would end the controversy between the parties on this matter and effectively establish each parties' right to the land in question.

 In its complaint, Odette's averred that, as a result of the construction of the Canal, the formerly adjacent River Road was relocated to the other side of the Canal and, since then, Odette's property has been accessible only by crossing over the Canal on a bridge connecting River Road to Odette's property. Odette's further averred that this bridge has been the only method of ingress/egress and that the land directly adjacent to the northern boundary of Odette's property has been used as a parking lot throughout the 1900's. Taking all of Odette's allegations as true, and resolving all doubts in favor of overruling the demurrer, we must conclude that Odette's has pled sufficient facts to allege both an easement by prescription and an easement by necessity. Moreover, because the Commonwealth has contested Odette's right to the alleged ease-

ments by requiring Odette's to sign leases for use of the bridge and parking area, this count does raise an actual controversy over which we maintain jurisdiction.

Accordingly, the preliminary objections filed by DCNR and DEP are overruled.

*ORDER*

AND NOW, this 1st day of July, 1997, the preliminary objections of the Commonwealth of Pennsylvania, Department of Conservation and Natural Resources, Bureau of State Parks and the Commonwealth of Pennsylvania, Department of Environmental Protection, Respondents, are hereby overruled. Respondents are ordered to file an answer to the Petition for Review within 30 days.

---

**17.** Citing *Nelson v. Dibble*, 353 Pa. Superior Ct. 537, 510 A.2d 792 (1986), DCNR also argues that DCNR, as a Commonwealth agency, is immune from claims of easement by prescription. However, in *Nelson*, the issue dealt with claims of title by adverse possession; thus, *Nelson* is inapplicable to our discussion here as an easement by prescription grants only *use* of property whereas adverse possession enables one to acquire actual *title* to property.