In re Estate of Victor B. Grimm, deceased.  Appeals
of Peter Monroe, Executor of Victor B. Grimm, de-
ceased, and of Caroline H. Grimm.

*Liquor laws—License—Nature of the property in a liquor license—Dece-
dents—Executors and administrators.*

A liquor license is a personal privilege which ends with the life of the
licensee; it is not assignable by him, does not go to his personal repre-
sentatives, and is not an asset of his estate.

A licensed saloon keeper by his will gave all his property to his wife.
The fixtures of the saloon and the stock of liquors were appraised at $50.00,
and the widow became a purchaser of them from the executor at that
price.  She leased the property in which the business had been conducted
by her husband, and two weeks after his death she petitioned the court of
quarter sessions to transfer the license to her.  Her petition was granted
by the court, and she conducted the business on her own account for three
months, when she sold the lease, good will, fixtures and stock then on hand
for $3,000, and on her petition the license was transferred to the purchaser.
The estate proved to be insolvent, and upon objection by a creditor to her
right to retain the money she had received from the sale of the property
she agreed, after the transfer of the license to the purchaser, that the
money should be held by the executor as a stakeholder until the right was
determined.  *Held,* that the widow was entitled to the whole fund as
against her husband's creditors.

Argued March 24, 1897.  Appeals, Nos. 14 and 18, Jan. T.,
1897, by Peter Monroe, executor et al., from decree of O. C.
Phila. Co., July T., 1895, No. 240, overruling exceptions to
adjudication.  Before GREEN, WILLIAMS, MITCHELL, DEAN
and FELL, JJ.  Reversed.

Exceptions to adjudication.  Before ASHMAN, J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to adjudication.

*Joseph P. McCullen,* for appellant, cited, Blumenthal's Peti-
tion, 125 Pa. 412.

*Wm. F. Johnson,* with him *Otto Wolff* and *John H. Sloan,* for
appellee.

OPINION BY MR. JUSTICE FELL, May 17, 1897 :

Victor B. Grimm at the time of his death was engaged in the retail liquor business. By his will he left all of his property to his wife, and appointed the appellant executor. The fixtures of the saloon and the stock of liquors were appraised at $50.00, and the widow became a purchaser of them from the executor at that price. She leased the property in which the business had been conducted by her husband, and two weeks after his death she petitioned the court of quarter sessions to transfer the license to her. Her petition was granted by the court, and she conducted the business on her own account for three months, when she sold the lease, good will, fixtures, and stock then on hand for $3,000, and on her petition the license was transferred to the purchaser. The estate proved to be insolvent, and upon objection by a creditor to her right to retain the money she had received from the sale of the property she agreed, after the transfer of the license to the purchaser, that the money should be held by the executor as a stakeholder until the right was determined. Upon the audit of the executor's account the auditing judge was asked to surcharge him with $3,000. This was done by the court, and the executor was directed to pay out of this fund the allowed claims of the creditors.

The things which the widow sold were the fixtures bought of the executor, the stock of liquors bought of others, the lease obtained of the owner of the building, and the good will of a business which she had conducted for three months. These things were hers, and to all of them she had an undoubted title. As the adjudication takes from her the price received from their sale and applies it to the payment of the debts of another, we have looked with some interest for the reasons which are supposed to sustain it. As stated by the auditing judge they are these : The executor had in his custody or control a business for which the decedent had procured a license which had some months to run; this business may have had a probable value beyond the value of the stock and fixtures, depending upon the contingency of the transfer of the license ; the executor was therefore " bound to make at least such a representation to the court as might have induced the court to order the payment to the estate by the transferee of the license of so much of the license fee as would repre-

sent the unexpired term of the license." Because of the executor's failure to make such a representation as might have influenced the court to regard the interests of the creditors as superior to those of the widow, and induced it to countenance the barter of a privilege to be granted only on the ground of the public necessity of the place and the personal fitness of the applicant, he is held liable, not for an amount proportionate to the unexpired term of the license, which would be about $800, but for the amount for which the widow, who had become a tenant of the real estate, afterward sold the lease, the good will, the stock, possibly largely increased, and the fixtures of a going business. The surcharge of the executor being thus justified on the erroneous assumption that he had under his control a business which in fact had ended with the life of the licensee and upon the supposition, unsupported by a word of proof, that a purchaser might have appeared who might have paid a higher price if assured that the license would have been transferred to him, it remained to justify the confiscation of the widow's money to pay her husband's creditors.

It is conceded that the widow came into possession of the stock and fixtures as a purchaser at a fair value; that the license was a purely personal privilege, which did not pass to the executor as an asset of the estate; that the creditors would have had no standing to object to the transfer to her; yet we are told that her right to control, possess and dispose of that which was her own is subject to a qualification by which she is deprived of the right of retaining the money received from its sale. No attempt is made to define or classify this qualification, and it doubtless would be difficult to do so, as it appears to be sui generis; but it is said to be due to the fact that by her negligence she contributed to the result. The negligence found is thus stated: "She filed, as we have seen, a petition describing herself as sole legatee, and saying nothing of creditors, which compelled the inference that no debts remained to be provided for. She did not even ask that a proportionate share of the license fee should be retained out of the purchase money; so that the inference that she was the only party in interest, and that the estate was solvent, became irresistible." The learned judge adds: "It is not proper to speculate upon the decree which would probably have been made if all the facts had

been divulged," and then proceeds to speculate as follows: "but it is very safe to say that the estate and the creditors would have been cared for to the extent of the unused license fee," and on this speculation he founds a decree taking from the widow three times the amount of the fee for the full year. We are wholly unable to follow this argument or to accept the conclusion reached.   Why the inference of the solvency of the estate would follow from the widow's omission to state in a petition in which she applied for the transfer of a personal privilege that there were creditors, and what its solvency had to do with the question before the court of quarter sessions, are not more apparent than is the authority thus in effect to summarily reconsider and reform a decree of that court.

No attempt is made by the learned counsel for the appellees to sustain the reasons on which the adjudication is based, but they advance others which are equally untenable.   They claim (1) that the widow took her legacy subject to the obligation to pay debts; (2) that the transfer of the license was taken by her with the assent of the executor until a sale of the whole business could be effected.   The first part of this contention may be answered by the fact that the widow took nothing as a legatee under the will, and the second is wholly unsupported by proof.   The license granted to the decedent was a personal privilege which ended with his life; it was not assignable by him, it did not go to his personal representatives, it was not an asset of his estate: Blumenthal's Petition, 125 Pa. 412.   The executor could not have carried on the business without a license had he been so disposed; and he could not, as executor, have obtained a license, as he would not then have been, as required by law, "the only person pecuniarily interested in the business."   It was his duty to obtain the best price he could for the stock and fixtures.   If some one willing to take the chance of procuring the lease of the house and a transfer of the license had offered more for the stock and fixtures than the price at which they were sold by him, or if there had been evidence that by diligence on his part such a person could have been found, there would have been reason for surcharging him. It is not pretended that there was any such evidence, and the finding of the auditing judge rests only upon unwarranted conclusions drawn from purely imaginary conditions.

The order of the orphans' court confirming the second adjudication is reversed and set aside, and it is ordered that distribution be made in accordance with the adjudication filed February 14, 1896, admitting however to the distribution the claims of creditors subsequently proved against the estate as appears by the adjudication of July 15, 1896.