In re Estate of Julius Mueller, deceased. Appeal of Louisa Mueller.

190     601
21 SC   400

190     601
224     308

*Decedents' estates—Liquor license—Executors and administrators.*

While a liquor license is not, per se, an asset of the estate of the licensee, yet if the widow, who is also one of the executors of the estate, continues to occupy the licensed premises for the unexpired term of the lease, and obtains a renewal of the license in her individual name, and makes no attempt to procure a purchaser, she will be properly surcharged with the value of the good-will of the business, but her coexecutor into whose hands or control no part of the estate ever came should not be made responsible for the surcharge.

Argued March 24, 1899. Appeal, No. 49, Jan. T., 1899, by Louisa Mueller, from decree of O. C. Phila. Co., July T., 1898, No. 75, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to adjudication.

ASHMAN, J., the adjudicating judge, stated the facts to be as follows:

It was sought to charge the widow as executrix with the value of the unexpired lease of the saloon at 1108 Sansom street. The decedent, it was shown, was in business at the time of his death as a saloon keeper. He occupied premises which apparently had been devoted to the sale of liquors continuously since the year 1868, and which were well known and were a popular resort, and he had secured a license for the current year. His widow obtained a renewal of the license in her individual name, and reopened the tavern on the day succeeding the funeral of her husband, and thereafter continued the business as her own. She admitted that she made no effort to procure a purchaser; and simply charged herself with the amount at which the stock and fixtures were appraised. This amount was $601.30; but no mention was made in the inventory, and no estimate was given in that paper of the good-will which attached to the business. That, however, was an element which could not with propriety be ignored, and it in turn derived its value from the license without which a legal trade could not have been conducted. Under the practice of the court having jurisdiction, licenses were granted only to such places as were supposed to meet a public want in given localities. The fact, therefore, that the decedent's saloon had been regularly accorded the privilege for years was a fair guaranty that the saloon was needed, and that it would continue to be favored in the future. The good-will of a business carried on in such a place and under such circumstances may have had a value much higher than that of the mere stock and fixtures; and at all events it ought not to be disregarded in making up an estimate of the market worth of that business. Evidence was furnished on these points, and the most conservative valuation which was placed by expert witnesses upon the good-will in the present instance was $4,000. Others went far higher, but no specific examples were given of prices which had been actually paid for businesses whose values depended, as in this case, upon the possession of a tolerably permanent license. In Buck's Estate, 185 Pa. 57, it was held that an executor who made no attempt to dispose of the good-will and the unexpired lease of a tavern, and who appropriated both

to his own use, should be surcharged with the amount which they would have sold for. What that amount shall be in any given case must be in large measure a matter of judgment upon ascertained facts. It was in evidence at the audit that the annual sales of beer alone in the decedent's saloon numbered 800 to 900 barrels; that the location was a good one, and that the place had been known and resorted to as a tavern for many years. A jury would be justified, the auditing judge thinks, in finding that the good-will, if properly offered for sale, would have realized the price of $4,000, independently of what would have been obtained for the fixtures and stock.

PENROSE, J., filed the following opinion, disposing of the exceptions, etc.:

A liquor license, or more properly a license to carry on a saloon, is not, per se, an asset of the estate of the licensee. It is a personal privilege, ceasing at his death unless continued by the court which granted it, acting in its judicial capacity; and as it is no part of the functions of an executor or administrator to conduct a business of this character, he cannot, of course, obtain a transfer. The privilege, however, while personal, is only exercisable at the place designated in the license, and is valueless if severed from it. The grant of the license, in the first instance, implies a decision by the proper court that "the place licensed" is "necessary for the accommodation of the public," and this having been once determined there can be but little difficulty in obtaining a transfer of the original license, or, if that has expired, the grant of a new one, to any person acquiring the right to occupy the accredited place, who possesses the statutory qualifications of being "a citizen of the United States, of temperate habits, and good moral character." Such a place has, necessarily, a greatly enhanced market value —just as it may also have by reason of good-will arising from the mere carrying on of a prosperous business during a time sufficiently long to give it a reputation. If the occupancy of the licensee is under a lease having some time to run, the unexpired term, in case of his death, is an asset of his estate, of which good-will and the opportunity of obtaining a transfer or grant of a license are inseparable incidents.

No executor or person acting in a fiduciary capacity is per-

mitted to appropriate to his individual benefit any profit or advantage derived, directly or indirectly, from his connection with the trust estate, even if it would be lost altogether if he did not receive it.   This is an elementary principle of equity: Keech v. Sandford, 1 Lead. Cas. in Eq. 48; Davoue v. Fanning, 2 Johns. Ch. 252; In re Heager's Executors, 15 S. & R. 66; Johnson's Appeal, 115 Pa. 129; and if such a person could find a purchaser for an unexpired license, he would be required to account for what he received, even though the purchaser acquired no right by reason of the sale.   Nor can an executor who is also legatee sever the license from the unexpired term to which it is incident, and thus prejudice the value of the latter as an asset, in order to gain some advantage to himself as legatee; his rights as legatee do not begin until he has fully performed his duties as executor, and his allegiance in the first instance is to the creditors of the estate.

The present case is not distinguishable from Buck's Estate, 185 Pa. 57, which is simply an illustration of well-settled principles and not, in the slightest degree, in conflict with Grimm's Estate, 181 Pa. 233, or any other case that has been decided with regard to liquor licenses.   Grimm's Estate did not involve the question of an appropriation of a license by an executor to his own use : A third party had become the owner by purchase of the stock and fixtures of the business, and had dealt directly with the landlord in obtaining a lease of the premises in which it was carried on; and as she stood in no relation of trust to the decedent's estate, and there was no evidence of collusion between her and the executor, the fact that she was the widow of the decedent did not give his creditors any right to complain that upon a subsequent sale she make a considerable profit, or to compel the executor to account for it.

Here the widow of the decedent is herself the executrix, and her appropriation to her own use has been of the unexpired term as well as its incidental right to apply for a continuance of the license, without which its value would be greatly diminished if not entirely destroyed.   The evidence fully justifies the finding of the auditing judge as to the value of the asset thus withdrawn from the decedent's creditors; while, in point of fact, as a surplus remains after payment of debts, which is awarded to her as legatee, the actual surcharge is, so far as she is concerned, to

be reduced by that amount, $1,428.37, leaving only $2,571.63 ($4,000—$1,428.37) to be paid by her.

We think, however, that the coexecutor ought not to be made responsible for the surcharge. It does not appear that any part of the estate ever came to his hands or under his control, and the account, though filed in the names of the two executors, is really the account of the executrix, who took possession of all the assets ; but as he disclaims participation in the account, he cannot, of course, be allowed commissions on the surcharge.

Exceptions dismissed, and adjudication, modified by confining the surcharge to the executrix, confirmed absolutely.

*Errors assigned* were (1) in dismissing the first exception to the adjudication, which was as follows : " Because the learned auditing judge erred in surcharging the accounting executors with the sum of $4,000, as the value of the good-will attached to the business of the decedent, there being no evidence that the good-will, apart from the license, was worth that sum ; " (2) in dismissing the second exception to the adjudication, which was as follows : " Because the learned judge erred in finding as a fact that the ' good-will if properly offered for sale would have realized the price of $4,000 ; ' " (3) in dismissing the third exception to the adjudication, which was as follows : " Because the learned auditing judge erred in finding as a fact that ' the most conservative valuation which was placed by expert witnesses upon the good-will in the present instance was $4,000 ; ' " (4) in dismissing the fifth exception to the adjudication, which was as follows : " Because the learned judge erred in not confirming the account as filed."

*Frederick J. Lambert*, for appellant.

*John Dolman*, with him *Thomas McConnell, Jr.*, and *Charles Knittel*, for appellees.

PER CURIAM, April 3, 1899:

There appears to be nothing in this record that would justify us in sustaining either of the four specifications of error. Neither of the questions involved requires discussion. For reasons given by the court below they were correctly disposed

of.    The decree is affirmed on the opinion of the learned judge
who wrote for the court in banc, and the appeal is dismissed at
appellant's costs.