# Aschenbach, Appellant, *v.* Carey.

*Decedents' estates—Liquor license—Executors and administrators.*

1. While a license for the sale of liquor is not in itself marketable, yet as it is granted for a particular place, it may add materially to the value of the fixtures, good will and unexpired term of the lease, if there be any. These an executor or administrator has for sale and they form part of the assets of the decedent's estate, for which it is his duty to obtain the best price possible, either by public or private sale.

2. Though a liquor license is not, per se, an asset of the estate of a decedent to whom it was issued, the representative of such estate can make no personal profit through it, and if he chooses to make of it a valuable asset for the estate, on no principle ought it be taken from the estate and made an asset of his own to satisfy his creditors. If a license is not per se an asset of an estate, it certainly is not an asset of anyone else.

3. Where an administrator has a liquor license granted to the decedent transferred to himself individually, but pays transfer charges and subsequent renewals out of moneys of the estate, deposits the moneys from the business in a bank for the benefit of the estate, and pays therefrom the expenses of the business, reserving nothing for himself, not even commissions, a personal creditor of the administrator cannot attach such moneys or the proceeds of the sale of such license as the individual property of the administrator.

Argued Jan. 8, 1909. Appeal, No. 253, Jan. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1900, No. 509, on verdict for garnishee in case of Annie E. Aschenbach v. Michael F. Carey and Joseph W. Aschenbach, Copartners, trading as Carey & Company, Defendants, and John Byrne, Jr., Garnishee. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Attachment execution. Before WILLSON, P. J.
The facts are stated in the opinion of the Supreme Court.
Verdict and judgment for garnishee. Plaintiff appealed.

*Error assigned* was in refusing binding instructions for plaintiff.

*Henry Spalding,* with him *David N. Fell, Jr.,* for appellant.—The license granted to the defendant Carey was granted to him in his own right, because under the law of this state a liquor license cannot be held in a representative capacity: Degan's License, 18 Phila. 458; Grimm's Est., 181 Pa. 233; Mueller's Est., 190 Pa. 601; Reilly's Est., 6 Pa. Dist. Rep. 252; Buck's Est., 185 Pa. 57; Auer's Est., 14 Pa. Dist. Rep. 114; Schmidt's Est., 14 Pa. Dist. Rep. 139; Fury's Est., 35 Pa. C. C. Rep. 298; Immendorf's Est., 190 Pa. 590.

The question of whether Carey was chargeable with the value of the license was not adjudicated by the orphans' court. Carey voluntarily accounted to that court as for a sum of money which he was willing to pay over for the license, and both before and after the accounting continued the business and treated the license as his own.

The estate of Laurence J. Carey has no interest in the controversy in this case.

*Walter Thos. Fahy,* with him *Frank A. McManus, Samuel P. Tull* and *Thomas A. Fahy,* for appellees.—Assuming appellant's contention that a license, per se, is not an asset of decedent's estate, to be correct, she is in no way benefited: Blumenthal's Petition, 125 Pa. 412; Grimm's Est., 181 Pa. 233.

The good will of a business carried on by a decedent is unquestionably an asset of his estate: Emeret's Est., 2 Parsons, 195; Wiley's App., 8 W. & S. 244.

However, whether valuable in itself or not, it has been held in Reilly's Est., 6 Pa. Dist. Rep. 252, and by the Supreme Court in Buck's Est., 185 Pa. 57, and Mueller's Est., 190 Pa. 601, that an executor or administrator cannot use the license of his decedent for his own profit.

Michael F. Carey was unquestionably a trustee. He appropriated to himself certain assets—whether license, or stock, good will and fixtures enhanced by the license—of the estate, paying no consideration therefor. He, as trustee, cannot profit at the expense of his trust estate; and the property so appropriated, or its proceeds, must be returned to the proper parties; and Carey's creditors stand in no better position as to it than himself: Garrison's App., 2 Grant, 216; Harrisburg Bank v. Tyler, 3 W. & S. 373; Sadler's App., 87 Pa. 154; Frank v. Kurtz, 4 Pa. Superior Ct. 233.

OPINION BY MR. JUSTICE BROWN, April 12, 1909:

On February 4, 1901, the appellant obtained a judgment against Michael F. Carey for $1,186.06. In February, 1906, she procured an attachment ad lev. deb. to be issued on it against John Byrne, Jr., as garnishee, to recover from him a

debt alleged to be due by him to Carey. The facts under which the appellant claims to be entitled to a judgment against the garnishee are either undisputed or uncontradicted.

Laurence J. Carey, who died December 2, 1903, was at that time the proprietor of a saloon and the holder of a retail license for the sale of liquor from the court of quarter sessions of the county of Philadelphia. Letters of administration on his estate were granted to his brother, Michael F. Carey, the appellee, who filed an inventory, in which the value of the license, stock, fixtures, etc., was appraised at $8,616.50. The appellee had this license transferred to himself as an individual and the same was renewed in his name in 1904 and 1905. Under the transfer and renewals of the license he carried on business for the benefit of the estate of his brother. He paid for the transfer and renewals of the license out of the estate's money. He deposited all receipts from the business in his name as administrator and out of the same paid all expenses. In 1905 he had a private bid for the license of $13,500, but was directed by the orphans' court to sell it at public sale. He did so, and Byrne, the garnishee, became the purchaser of it for $16,000. The attachment of the appellant was issued to reach this purchase money. The jury were instructed that if they believed the foregoing undisputed facts, the verdict should be for the garnishee, and they so found. The plaintiff asked that a verdict be directed for her, on the ground that when the license was transferred to Carey and renewed in his name it became, under the circumstances stated, his individual property, and the price bid for it by Byrne was payable to him as an individual and liable to attachment for his debts. In support of this the appellant relies upon the clause in sec. 5 of the Act of May 13, 1887, P. L. 108, which provides that an applicant for a liquor license must set forth in his petition for it that he "is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner pecuniarily interested therein, during the continuance of the license." This averment is found in the application of Carey for the transfer of the license and in each of the petitions for a renewal of it.

Assuming that the court of quarter sessions may have been imposed upon and that it would not have granted the license if it had been fully informed as to what he intended to do under it, that is not a matter for consideration in this proceeding. The sole question is whether, in view of the act of 1887, or any rule of law, the learned court below erred in its instructions to the jury and in refusing judgment for the plaintiff n. o. v.

In procuring the transfer of the license to himself and having it renewed Michael F. Carey expended none of his own money. The transfer and renewals were paid for out of moneys of the estate of his brother, and the appellant is first confronted with the fact that no money that she ought to have, as a creditor of the appellee, was used for the benefit of the estate of his brother. What rule of law or of public policy was violated by Michael in husbanding the estate of Laurence? As just stated, he did nothing that took anything from the appellant as one of his creditors. He merely conserved the estate of his brother for its creditors. He had no right, under any guise, to use it or anything of value to it for his own benefit, and he did not attempt to do so. On the contrary, he did not retain a dollar for himself, not even commissions for his services as administrator. All of the receipts from the saloon were placed in bank for the benefit of the estate and out of them all of the expenses of the business were paid, including the license fees. The lease was not transferred to him. He kept nothing for himself. It is true that in his applications for the transfer and renewals of the license he stated he was the only person in any manner pecuniarily interested in the business, but the only conclusion to be reached from the testimony is that he did not intentionally impose upon the court. But even if the legal conclusion is that he did, how can that avail the appellant when what he did was done in perfect good faith for the benefit of his brother's estate? Upon what principle ought the appellant to be permitted to take from that estate what has been made for it by a faithful administrator? The answer to this, in substance, is that we have held that a license to sell liquor is not an asset of a decedent's es-

tate. We have used that expression, but what was decided in two of the cases in which it is used—Buck's Estate, 185 Pa. 57, and Mueller's Estate, 190 Pa. 601—would clearly make the appellee surchargeable with what he has voluntarily accounted for to the estate, and, in the third—Grimm's Estate, 181 Pa. 233—the question involved was not the one now before us.

In Buck's estate the administrator took possession of the premises in which the business had been carried on and procured a transfer of the license to himself, using the stock and fixtures of which the decedent had been the owner and charging himself with their appraised value of $200. The uncontradicted testimony was that the unexpired term, good will and opportunity of getting a license were worth, without the stock or fixtures, from $2,000 to $2,500, and as the accountant made no effort to procure a purchaser, but appropriated the whole to himself, he was surcharged the highest price fixed by the witnesses as the value of the business at the time of decedent's death. In sustaining this surcharge, while we said that a license to sell liquor is a personal privilege, and upon the death of the holder does not go to his personal representative, we further said: "But the fact that a license had been granted to sell liquor at a particular place may increase the value of that which the executor or administrator may have to sell. On the hearing of an application for a retail license the court considers the public necessity of the place as well as the personal fitness of the applicant, and the granting of a license is the finding that the place in its location and appointments is a suitable place for the sale of liquor. The opportunity to secure a transfer of the license and a renewal at the end of the year may materially affect the value of the fixtures, good will and unexpired term of the lease. When this is shown to be the case, and the accountant has failed in the performance of a plain duty, there is ground for surcharge." In Mueller's estate, in which the expression is used that a liquor license is not, per se, an asset of the estate, the question was as to the surcharge of one of the executors, who continued to occupy the licensed premises for the unexpired term of the lease and obtained a renewal of the license in her individual

name.  She reopened the tavern on the day succeeding the. decedent's funeral and thereafter continued the business as her own.  She made no effort to procure a purchaser and simply charged herself with the amount at which the stock and fixtures were appraised.  The court below surcharged her, holding that the good will of the business was an element which could not, with propriety, be ignored, and it, in turn, derived its value from the license, without which a legal trade could not have been conducted.  In dismissing the exceptions to the adjudication by which she was surcharged, the orphans' court of Philadelphia county said, through PENROSE, J., what we approved in affirming the decree: "Such a place has, necessarily, a greatly enhanced market value— just as it may also have by reason of good will arising from the mere carrying on of a prosperous business during a time sufficiently long to give it a reputation.  If the occupancy of the licensee is under a lease having some time to run, the unexpired term, in case of his death, is an asset of his estate, of which good will and the opportunity of obtaining a transfer or grant of a license are inseparable incidents.  No executor or person acting in a fiduciary capacity is permitted to appropriate to his individual 'benefit any profit or advantage derived, directly or indirectly, from his connection with the trust estate, even if it would be lost altogether if he did not receive it.  This is an elementary principle of equity: Keech v. Sandford, 1 Lead. Cas. in Eq. 44; Davoue v. Fanning, 2 Johns. Ch. 252; In re Heager's Executors, 15 S. & R. 65; Johnson's Appeal, 115 Pa. 129; and if such a person could find a purchaser for an unexpired license, he would be required to account for what he received, even though the purchaser acquired no right by reason of the sale.  Nor can an executor who is also legatee sever the license from the unexpired term to which it is incident, and thus prejudice the value of the latter as an asset, in order to gain some advantage to himself as legatee; his rights as legatee do not begin until he has fully performed his duties as executor, and his allegiance in the first instance is to the creditors of the estate." While a license for the sale of liquor is not in itself market-

able, yet as it is granted for a particular place, it may add materially to the value of the fixtures, good will and unexpired term of the lease, if there be any. These an executor or administrator has for sale and they form part of the assets of the decedent's estate, for which it is his duty to obtain the best price possible, either by public or private sale: Immendorf's Estate, 190 Pa. 590. The learned trial judge below would have erred if he had not held that, under our cases, the money realized by the appellee from the license belonged to the estate of which he was administrator.

Instead of attempting to profit personally from the fixtures of the saloon, the stock of liquors on hand at the death of his brother and the opportunity of procuring a transfer of the license, as was attempted by the administrator in Buck's estate and the executor in Mueller's, this appellee, as administrator, felt from the very beginning that everything belonged to the estate he represented, and, with exceptional fidelity, carried on the business as trustee for it through a license in his individual name. Though a liquor license is not, per se, an asset of the estate of a decedent to whom it was issued, the representative of such estate can make no personal profit through it, and if he chooses to make of it a valuable asset for the estate, on no principle ought it to be taken from the estate and made an asset of his own to satisfy his creditors. If a license is not, per se, an asset of an estate, it certainly is not an asset of anyone else.

The appellee did not, as counsel for appellant seem to think, enter into a contract with those interested in the estate to do what he did for its benefit, and no one has attempted to compel him to perform a contract which might not be enforcible as being in violation of some positive law or a rule of public policy. He voluntarily brings to the estate what he made for it when acting for it, and no one else is entitled to what was so made. As to this the learned trial judge, in his opinion refusing judgment for the plaintiff upon the whole record, very properly said: "We have the fact that the defendant recognized his fiduciary relation and made no effort to reap any personal advantage from the licenses which actually stood in

his name. If, then, the law would compel him, in case the money in question had voluntarily been paid to, and received by, him, personally, to account for the same for the benefit of the estate, would it not be an incongruous view which would permit his judgment creditor by attachment to reach and take the money from the debtor? It appears to us that it would, and that the anomaly would be made worse by considering that the defendant made no claim, individually, to the money, but, on the contrary, openly avowed his trust relation to it."

Judgment affirmed.