Feitz Estate.

Argued November 21, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Ralph S. Snyder*, Deputy Attorney General, with him *Irvin Stander*, Special Assistant Attorney General, and *Anne X. Alpern*, Attorney General, for Commonwealth, appellant.

*Abraham J. Levinson*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 16, 1961:

This appeal presents only one question: is the value of the statutory right to apply, after death, for the transfer of a restaurant liquor license, owned by decedent at the time of death, subject to inclusion as part of the decedent's estate taxable for inheritance tax purposes?[1]

On January 16, 1959, Anna O. Feitz died testate, in Philadelphia. By her will she provided, inter alia: "Second: I give, devise and bequeath to Joseph Goldman, all my right, title and interest in and to the restaurant liquor license issued for premises 177 West Girard Avenue, and in and to any other license which I hereafter may hold and issued by the Pennsylvania Liquor Control Board." Goldman was named her executor.

As executor, Goldman, on January 26, 1959, requested the Liquor Control Board to transfer the dece-

---

[1] Under the Act of June 20, 1919, P. L. 521, Art. I, §1, as amended, 72 PS §2301.

dent's liquor license to himself as an individual in accordance with decedent's testamentary direction. On March 4, 1959, this transfer was completed.

In the appraisement of decedent's personal estate for inheritance tax purposes, the Commonwealth included the value ($14,500) of the right to apply for a transfer of decedent's liquor license. From such appraisement, Goldman appealed to the orphans' court of Philadelphia County averring that such value was not part of decedent's taxable estate. Judge SAYLOR dismissed the appeal and held such value taxable. The court en banc, in reliance upon *Ryan Estate,* 375 Pa. 42, 99 A. 2d 562, reversed Judge SAYLOR and held such value not taxable. From that decree, this appeal has been taken by the Commonwealth.

The Commonwealth's argument is two-fold: (1) that the instant factual and legal situation is distinguishable from the situation presented in *Ryan*; (2) that, even if it were otherwise, *Ryan* was erroneously decided and should be overruled.

To determine its rationale and apposition to the present situation *Ryan* must be examined. In *Ryan,* the decedent, owner of a restaurant liquor license, died intestate; upon his death, on application of his widow, as administratrix, the license was transferred by the Board to the widow as the surviving spouse under the provisions of the then applicable §408(c) of the Liquor Control Act of 1937, P. L. 1762,[2] as amended, which provided, inter alia: ". . . In the case of the death of a licensee, the board may transfer the license to the surviving spouse or personal representative or to a person designated by him." The fact that the license trans-

---

[2] 47 PS §4-408 (Public Service Liquor Licenses). Reenacted by the Liquor Code of 1951, (April 12, P. L. 90, art. IV, §468), as amended 1953, Aug. 22, P. L. 1340, §1; 1956, Jan. 26, P. L. (1955) 966, §1, 47 PS §4-468.

fer application had been signed by the surviving spouse in her capacity as administratrix of the estate was considered unimportant inasmuch as the Liquor Control Act, supra, gave the surviving spouse the right to have the license transferred to herself and "this right would not have been abrogated had another individual been appointed administrator." *Ryan* held that the value of the license and the value of the right to apply for a transfer thereof were not taxable. The Commonwealth contends that *Ryan* must be restricted to its specific factual situation and is not actually authority for the proposition that neither a liquor license *per se* nor the right to apply for its transfer is not taxable for inheritance tax purposes.

In *Ryan,* the Court distinguished *Aschenbach v. Carey,* 224 Pa. 303, 73 A. 435. In *Aschenbach,* the decedent's liquor license was transferred on application of his brother-administrator to himself as an individual. As administrator, the brother charged himself with the license and paid for the transfer and reissuances of the license from estate funds; all moneys received from operation of the business conducted under the license were deposited in the administrator's account and the eventual sale of the transferred license was under direction of the Orphans' Court. In *Ryan,* distinguishing *Aschenbach,* it was said (p. 46) : "In other words, the administrator in the Aschenbach case purposely treated the license as an asset of the estate and enhanced the value of the estate by the transfer to the purchaser. He never claimed the license to be his own, although it was issued to him. In the case at bar [Ryan] the license was issued to the surviving spouse, who always held it as hers and never accounted for it as an asset of the estate. She sold her license so that it was transferred from place to place, thus not enhancing the value of the estate as in the Aschenbach case. The principal difference between the Aschenbach

case and the instant matter is that in the Aschenbach case the individual who held the license used it for the benefit of the estate. In the instant case the surviving spouse used the assets of the estate for her own benefit as the owner of the license."[3]

Had the Court stopped at this point in its determination, *Ryan* would simply stand for the proposition that, when a liquor license is transferred by a decedent's widow, even though acting as personal representative, to herself as the surviving spouse, the value of such license or the value of the right to apply for a transfer of such license is not taxable for inheritance tax purposes. However, the Court went further and stated (p. 46): "The claim for inheritance tax was allowed by the court below. For the reasons heretofore stated, said license so issued . . . to the surviving spouse was her individual property. In addition, it was not 'property of which the decedent was seized or possessed at the time of his death' (under the Act of 1919, 72 PS §2301, as amended): McCandless Estate, 374 Pa. 551, 97 A. 2d 807. Since the decedent's license terminated at his death, and was not property of which he was seized or possessed at the time of his death, it is somewhat difficult to understand at what point of time it could have become an asset of his estate." At least by implication, *Ryan* thus indicated that a liquor license, terminable upon the holder's death, is not an asset of a decedent's estate taxable for inheritance tax

---

[3] In a well-considered comment on *Ryan*, it was stated: "The principal case (Ryan) is not understood to be a flat holding that in no case can a value be assigned to a Pennsylvania liquor license for estate administration and inheritance tax purposes. On the contrary, the very bases upon which the Court distinguished Aschenbach v. Carey, 224 Pa. 303, show that the result depends very much upon who the personal representative is and how he handles the situation." Fiduciary Review, Digest and Comment on Cases, November 1953.

purposes and that the value of the statutory right to apply for a transfer of the license to decedent's surviving spouse or personal representative or to a decedent-designated person likewise is not taxable.

If *Ryan* were restricted to its specific factual situation and *Aschenbach* is still the law as *Ryan* recognized, then the taxability for inheritance tax purposes of the value of a liquor license or the value of the right to apply for a transfer of such license to the statutorily designated persons would depend upon the status of the personal representative and the manner in which the personal representative elects to treat the transferred license, a result which would be anomalous, uncertain and clearly unsatisfactory. On the other hand, if *Ryan* be construed as holding that the value of a decedent's liquor license or the value of the right to apply for a transfer of the license is *never* subject to taxation for inheritance tax purposes, then the Commonwealth would be precluded from evaluating and taxing the transfer of a right which both common sense and realistic thinking recognize as possessive of a real and tangible value to the estate of a decedent.

In large measure, the broad language of *Ryan* was predicated upon *Pichler v. Snavely,* 366 Pa. 568, 79 A. 2d 227. *Pichler* decided that the value of a liquor license cannot be adequately or accurately measured in an action at law and, therefore, assumpsit will not lie for damages resulting from a failure to perform an inter vivos agreement to transfer a liquor license. *Pichler,* although recognizing that equity will grant specific performance of a contract to sell or assign a liquor license and to that extent that a liquor license itself possesses value, stated that the liquor license itself was not a property right but a personal privilege which would not pass to a decedent's personal representatives or become an asset of a decedent's estate. With that statement there can be no quarrel and to that extent

*Ryan's* reliance on *Pichler* was not in error. However, *Pichler* did not consider whether the right to apply for a transfer of the liquor license after the death of the holder constituted a valuable asset of the holder's estate nor was it concerned with the taxability of the value of such right. On the other hand, as Mr. Justice CHIDSEY, speaking for the dissenting three justices in *Ryan* and after an examination of the authorities upon which *Pichler* was predicated, noted (p. 55) : ". . . all of the above cases[4] have consistently held that the value of the opportunity of obtaining transfer of a liquor license is an asset of the estate and upon proof of the fact that the personal representative has not obtained a fair value for that asset, a surcharge is proper."

*Ryan* and its application has become the source of confusion among the lower courts of the Commonwealth: *Chylak Estate,* 6 Fid. Rep. 192; *Barry Estate,* 8 Fid. Rep. 514; *Imhof Estate,* 7 Fid. Rep. 567.[5] It is encumbent upon us to reconsider *Ryan;* in so doing, two propositions must be considered as established: (1) no person has a constitutional or property right to a liquor license (*Tahiti Bar, Inc. Liquor License Case,* 395 Pa. 355, 361, 150 A. 2d 112; *Fanning's License,* 23 Pa. Superior Ct. 622, 628; *Cochran License,* 47 Pa. Superior Ct. 376, 381; *Appeal of Spankard,* 138 Pa. Supe-

---

[4] *Grimm's Estate,* 181 Pa. 233, 37 A. 403; *Buck's Estate,* 185 Pa. 57, 39 A. 821; *Mueller's Estate,* 190 Pa. 601, 42 A. 1021.

[5] In *Kosco v. Hachmeister, Inc.,* 396 Pa. 288, 293, 152 A. 2d 673, it was argued that, under *Pichler,* a liquor license is not a property right but only a personal privilege. We stated : "This may be admitted, but if a man has a privilege and is prevented from exercising it by another's fault, he loses value during the running period of the privilege." We there recognized that this privilege is "very often valuable" and that "the fact that a license may not be assigned without the permission of the State Liquor Board and that it does not become an asset of a licensee's estate when he dies merely restricts the market but does not prevent the privilege from having value."

rior Ct. 251, 259, 10 A. 2d 899) and (2) a liquor license *per se*—a personal privilege and not a property right—is not an asset of the estate of the deceased holder.

Dissenting in *Ryan*, Mr. Justice CHIDSEY distinguished between the license itself and the right granted by the statute to apply for the transfer of the license of a deceased holder (pp. 55, 56) : "The license itself does not pass to his estate. However, the valuable incident of the right to apply for a new license which the Board is authorized to grant does pass under the Liquor Control Act . . . to the surviving spouse or the personal representative [or to a person designated by him]. Therefore, to the extent of the value of the right to apply for a new license in the name of the surviving spouse or the personal representative [or in the name of the person designated in the will] and the consequent right of sale and transfer, the estate is enhanced." In *Jaffe v. Pacific Brewing & Malting Co. et al.,* 124 P. 1122, 1123 (Wash.) it was said: "The right to conduct the business is personal to the licensee, and does not pass upon his death to his administrators or assigns. But this is true only as between the state or the licensor and the licensee, and as to third persons when the statutes do not permit transfers from one person to another. 'But where the statute recognizes the right of transfer from one to another, and where the right is a valuable right, capable of being surrendered and reduced to money, a different rule prevails. In such cases the license or right to do business becomes a valuable property right, subject to barter and sale. It is property with value and quality.' . . .".

As between the Commonwealth and the licensee of a restaurant liquor license, the license is simply a personal privilege subject to termination for cause or upon the death of the licensee; by its very nature, the license itself does not become an asset of the estate of the de-

ceased licensee. However, since, by legislative fiat, upon the death of the licensee, the board is invested with the authority to transfer the license to the licensee's surviving spouse or personal representative or to a person designated by the licensee, the right to apply for such transfer is a right which possesses value. The legislative intent is evident; the holder of a restaurant liquor license has the right to designate the person who may apply for a transfer of such license after his death and, in the absence of such designation, the surviving spouse or personal representative may do so. The statute insures that the holder of the license, by action or inaction, may pass on the right to apply for a transfer of the license. It is this right—a valuable right— which the decedent has as distinguished from the license itself. Such a construction is not novel. In fact we have held that where a licensee bargains by contract to transfer to another his license, an action will lie for specific performance of that contract, a clear recognition that the right to apply for a transfer of the license is a property right: *Cochrane v. Szpakowski,* 355 Pa. 357, 49 A. 2d 692; *Pichler v. Snavely,* supra.

Annie O. Feitz expressly designated Goldman as the person to whom she transferred the right to apply for a transfer of her restaurant liquor license and, upon her death, that right of which she died possessed and seized was transferred to Goldman. Such right is a valuable asset of the decedent's estate; to hold otherwise, is to ignore the practicalities of the situation and to substitute abstract theories for the realities of the market place.

The value of the right to apply for a transfer of the decedent's license transferred by will to Goldman is an asset of the decedent's estate subject to taxation for inheritance tax purposes. To the extent that *Ryan* is in conflict, *Ryan* is overruled.

Decree reversed with costs on the estate.

**446**

DISSENTING OPINION BY MR. JUSTICE BELL:

In *Pichler v. Snavely*, 366 Pa. 568, 79 A. 2d 227, the Court in a unanimous opinion said (page 569) : "The law is well settled that a liquor license is not a property right, but only a purely personal privilege for a specific limited time, which is subject to termination by the Liquor Control Board for cause and which, in any event, terminates with the licensee's life. A liquor license or the privilege to sell liquors for a specified time, although often very valuable, is not assignable (as that term is generally understood), *nor does it** go to the personal representatives or *become an asset of the holder's estate in case of death*: Grimm's Estate, 181 Pa. 233, 236, 37 A. 403; Blumenthal's Petition, 125 Pa. 412, 415, 18 A. 395; Buck's Est., 185 Pa. 57, 60, 39 A. 821; Mueller's Est., 190 Pa. 601, 603, 42 A. 1021; Commonwealth v. Cochran Post No. 251, 350 Pa. 111, 119, 38 A. 2d 250; Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, 259, 10 A. 2d 899."

In *Ryan Estate*, 375 Pa. 42, 99 A. 2d 562 (1953), the Court said (pages 44, 46) : "I. The decedent was the owner of a liquor license. At his death in 1950 the liquor license was transferred to his surviving spouse under the provisions of §408(c) of the Pennsylvania Liquor Control Act of 1937, P. L. 1762, as amended, which provides, inter alia: '. . . In the case of the death of a licensee, the board *may transfer* the license to the surviving spouse or personal representative or to a person designated by him.' . . . [The Court then quoted with approval the law as it had been reiterated in Pichler v. Snavely, 366 Pa., supra.] . . .

"II. The Commonwealth of Pennsylvania appraised at $5,000 the liquor license which the surviving spouse had obtained from the Liquor Control Board. The claim for inheritance tax was allowed by the court be-

---

* Italics throughout, ours.

low. For the reasons heretofore stated, said license so issued under the Pennsylvania Liquor Control Act to the surviving spouse was her individual property. In addition, *it was not 'property of which the decedent was seized or possessed at the time of his death'* (under the Act of 1919, 72 PS §2301, as amended) : McCandless Estate, 374 Pa. 551, 97 A. 2d 807. *Since the decedent's license terminated at his death, and was not property of which he was seized or possessed at the time of his death, it is somewhat difficult to understand at what point of time it could have become an asset of the estate."*

In *Blumenthal's Petition*, 125 Pa., supra (1889), this Court dismissed an appeal from the refusal of a petition to transfer a liquor license. In that case the Court held that under the Act of 1858 the Courts of Quarter Sessions have power to transfer a license to sell liquors, but the power is discretionary, as, admittedly, it is under the present law. The Court, speaking through Mr. Chief Justice Paxson, said (page 415) : "While it is true, as was said in Raudenbusch's Petition, 120 Pa. 328, that 'neither the petitioner nor any other person in this state has any property in the right to sell liquors,' yet it is also true that when the state grants a license to a man for that purpose, the latter acquires a privilege to sell liquors for a specified time, for which he has paid the Commonwealth a valuable consideration. *The privilege, however, is personal,* and is not assignable, *nor does it go to the personal representatives in case of death."*

*Ryan Estate* and all the prior decisions held that the value of a liquor license and the value of the right to apply for a transfer thereof were not subject to the Pennsylvania inheritance tax. That has been the law of Pennsylvania from 1889 until today, iterated and reiterated many times by this Court. It is now expressly overruled and we believe 7 other decisions of this

Court covering a period of 70 years are impliedly over-
ruled. We are tempted in this case, as in nearly 50
additional cases decided in the last few years, to pose
the question "stare decisis quo vadis?"

Even if the law which has existed for over 70 years
is overruled, the majority is still confronted with and
confounded by the language of the taxing Act and the
applicable principles of interpretation.

A liquor license is issued for a period of one year.
The majority opinion admits that at least between the
Commonwealth and the licensee "the license is simply
a personal privilege subject to termination for cause
or upon the death of the licensee; by its very nature
the license itself does not become an asset of the estate
of the deceased licensee." However, the majority de-
cide that by virtue of legislative fiat "the right to apply
for such transfer is a right which possesses value" and
therefore it must be subject to inheritance tax. Of
course, this is a non sequitur and flies in the teeth of
the language of the Pennsylvania Inheritance Tax Act
and the principles governing the interpretation there-
of. The Pennsylvania Inheritance Tax Act of June 20,
1919, P. L. 521, as amended, provides: "ARTICLE I. Im-
position and Rate of Tax. Section 1. . . . That a tax
shall be and is hereby, *imposed upon the transfer of
any property,* real or personal, . . . to persons or cor-
porations in the following cases: (a) When the trans-
fer is by will or by the intestate laws of this Common-
wealth *from any person dying seized or possessed of
the property* while a resident of the Commonwealth,
whether the property be situated within this Common-
wealth or elsewhere."

The Act could not be clearer. It taxes only the
transfer or passing of property, i.e., the interest of the
testator or intestate (Section 45) *from any person dy-
ing seized or possessed of the property.* Even if, con-
trary to all the foregoing decisions, a liquor license is

considered property and not a personal privilege, everyone agrees that it terminates at the death of the licensee-decedent, and it is not and was not assignable.* Certainly within the meaning of the Inheritance Tax Act the decedent did not die seized or possessed of property or of any interest therein, which because it was his was transferable by him by will or under the intestate laws. It is, we repeat, not property of the decedent which he can transfer in any way, shape or form and hence under the clear language of the Act and likewise under the pertinent authorities is not subject to the Pennsylvania Inheritance Tax. "Acts imposing a tax must be strictly construed against the Commonwealth and all reasonable doubt must be resolved in favor of the taxpayer: Commonwealth v. Budd Company, 379 Pa. 159, 108 A. 2d 563; Allentown School District Mercantile Tax Case, 370 Pa. 161, 87 A. 2d 480; Murray v. Philadelphia, 364 Pa. 157, 71 A. 2d 280; Commonwealth v. Repplier Coal Co., 348 Pa. 372, 35 A. 2d 319." *Loeb Estate,* 400 Pa. 368, 372, 162 A. 2d 207. Accord: *Tax Review Board v. Belmont Laboratories Company,* 392 Pa. 473, 141 A. 2d 234; *Paper Products Co. v. Pittsburgh,* 391 Pa. 87, 137 A. 2d 253. In other words, if there is any reasonable doubt as to the validity of a tax Act or what it covers, or whether it includes and governs the matter involved in a particular case, the taxing statute must be construed in favor of the taxpayer and most strongly against the Government. So construed the license is clearly not subject to tax and the uncertain right which the liquor law gives a surviving spouse cannot possibly make a right in favor of a widow, "property of the decedent."

Moreover and equally important it is impossible to determine at decedent's death—and that is the time at

---

* Section 468, Act of April 12, 1951, P. L. 90, as amended January 26, 1956, P. L. 966.

which the value of the opportunity of asking the liquor board to transfer the license must be ascertained and determined—the value of the decedent's license which under the law terminates at his death and which admittedly is not a part of his estate. We repeat, there is no absolute or vested right in the deceased licensee, nor indeed in his widow or his personal representative, to have the liquor license transferred to the widow or to anyone. The language of the liquor control statute is clear. The Liquor Control Board has a right *in its sole discretion to transfer or not transfer the license, and to do it if, as and when it desires* and then only for the balance of the yearly term for which it was issued. The instant case aptly illustrates the impossibility of ascertaining and determining (or doing anything except make a wild guess of) *the value at time of decedent's death of this so-called opportunity* to have the Liquor Control Board *in its sole discretion at some future undeterminate time* transfer the license. That point and the impossibility of doing anything but guess as to the value of the "opportunity" at the death of the licensee has been overlooked or glossed over by the majority. Decedent died on January 16, 1959. It was not until March 4, 1959 that the Liquor Control Board authorized a transfer of the decedent's liquor license to Goldman, an individual. It is, we repeat, clear as crystal that no one could fairly, reasonably or accurately determine as of January 16, 1959 what was the value to decedent's estate of the liquor license which terminated at decedent's death and which it could not sell, or the value of the opportunity which the law gave to a widow or personal representative to have a transfer made or refused at the sole discretion of the Board at an indeterminable future time.

Lord Coke's famous maxim which has guided Bench and bar and text authorities for over 300 years has apparently been embalmed in the Dead Sea, or lost in the

desert sands of Sahara. As Mr. Justice OWEN J. ROBERTS aptly said in *Smith v. Allwright*, 321 U. S. 649, 669 : ". . . the instant decision, overruling that announced about nine years ago, tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and this train only." In the last few years this Court has overruled more than a score of rules or principles long established and recently reiterated by the Supreme Court of Pennsylvania. Some of the decisions which were overruled had been handed down within the last three years and some within a period of months. To say that I am deeply concerned with this trend which has created such instability and uncertainty in nearly every field of the law is a gross understatement. To paraphrase Justice ROBERTS' words, this decision like many others made by the present Court tends to bring every decision of this Court into the same class as a restricted railroad ticket marked good for this day and this train only and then only until a new passenger gets aboard at the next station stop.