## Lieberman, et al. *v.* Philadelphia Redevelopment Authority.

Argued February 6, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Frances J. Moran,* with him *Leon Katz,* for appellant.

*Germaine Ingram,* with her *Austin Norris* and *Norris, Hutton and Wells,* for appellees.

OPINION BY JUDGE ROGERS, April 4, 1973:

The Redevelopment Authority of the City of Philadelphia here appeals a judgment entered against it in a condemnation case tried below by a judge without a jury.

The appellees, Irwin and Lillie Lieberman, conducted a taproom business in a premises owned by others located in center-city Philadelphia. The last written lease under which they occupied the premises was for a term of five years from November 1, 1961 with an option to renew for a further term of three years. The lease included a clause providing for its termination upon condemnation of the demised premises by any government agency. The Redevelopment Authority condemned the property on January 30, 1969, a date, as appears, nine months in advance of the termination of the Liebermans' optional three year term. The Liebermans were evicted by the Authority on June 1, 1969.

The parties, before any litigation, settled on a list of machinery, equipment and fixtures in the premises belonging to the Liebermans for the taking of which they were entitled to compensation by Section 603(3) of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-603(3). The proceedings below were informal in the extreme and more nearly resembled settlement negotiations than a trial of the issues. It is nevertheless clear that the Liebermans did not claim damages for the destruction of their leasehold. Nor, under Pennsylvania law were they entitled to such in the presence of the provision of the lease effecting its termination upon condemnation. *Scholl's Appeal,* 292 Pa. 262, 141 A. 44 (1928). It is equally clear that the Liebermans did, however, from the outset claim compensation for injury to their liquor license and for business dislocation damages.

At the trial, the Liebermans' only witness was Irwin Lieberman. He testified as to his opinion of the value not only of the machinery, equipment and fixtures but also, over objection, of the liquor license, which latter he stated was worth $35,000 to $40,000 before condemnation but was valueless thereafter because

a transferee who would pay anything for it could not be found. Mr. Lieberman was also permitted to state the amounts of oral offers for the business made in 1961 by persons now dead or otherwise unavailable and the amount of the net profits of the business. Some of this testimony was elicited by questions of the trial judge and little, if any, of it was objected to, although the number of interruptions and the length of the colloquies in the transcript make it difficult to ascertain with any certainty what was taking place.

The Authority's evidence consisted only of an expert's testimony as to the value of the machinery, equipment and fixtures.

The trial judge awarded the condemnees the total sum of $40,000, of which $35,000 was for "all elements" except business dislocation and $5,000 for business dislocation damages. The "elements" considered by the court to be compensable were the liquor license and the "going concern value of the business," in discussing which the judge made a calculation of the value of the business by capitalizing the net profits. The amount of the award for business dislocation damages was arrived at by multiplying the monthly rental of $300 by 24 months.

The principal issues of the case are whether the liquor license was compensable and what amount, if any, of business location damages the Liebermans are entitled to.

As regards the license, the condemnees and the court below principally rely on *Feitz Estate*, 402 Pa. 437, 167 A. 2d 504 (1961). That case held that the statutory right to apply, after death, for the transfer of a liquor license owned by a decedent at the time of death was subject to inclusion as part of the decedent's estate taxable for inheritance tax purposes. It follows, the appellees argue, that the liquor license is a property in-

terest for the purpose of condemnation. The fatal weakness of the argument is that *Feitz* reaffirmed the law of Pennsylvania that the liquor license, *per se,* is a purely personal privilege and not a property right,[1] and clearly distinguishes between the license itself and the right of the holder of the license in some circumstances to transfer the same: "As between the Commonwealth and the licensee of a restaurant liquor license, the license is simply a personal privilege subject to termination for cause or upon the death of the licensee; by its very nature, the license itself does not become an asset of the estate of the deceased licensee. However, since, by legislative fiat, upon the death of the licensee, the board is invested with the authority to transfer the license to the licensee's surviving spouse or personal representative or to a person designated by the licensee, the right to apply for such transfer is a right which possesses value. The legislative intent is evident; the holder of a restaurant liquor license has the right to designate the person who may apply for a transfer of such license after his death and, in the absence of such designation, the surviving spouse or personal representative may do so. The statute insures that the holder of the license, by action or inaction, may pass on the right to apply for a transfer of the license. It is this right—a valuable right—which the decedent has as distinguished from the license itself. Such a construction is not novel. In fact we have held that where a licensee bargains by contract to transfer

---

[1] *Tahiti Bar, Inc. Liquor License Case,* 186 Pa. Superior Ct. 214, 142 A. 2d 491 (1958). In *Cavanaugh et al. v. Gelder et al.,* 364 Pa. 361, 364, 72 A. 2d 85 (1950), our Supreme Court approved the following statements: " 'A liquor license, even when granted, is not a property right; it is only a privilege. . . . It may be taken away by the governing authorities without compensation to the holder.' "

to another his license, an action will lie for specific performance of that contract, a clear recognition that the right to apply for a transfer of the license is a property right: [Cases omitted]." 402 Pa. at 444-5, 167 A. 2d at 537-8. Irwin Lieberman's testimony is that following the condemnation he placed the license, which, of course, the appellees still owned, with brokers for sale and that no one could be found who would pay anything for its transfer. Hence, the right to transfer held taxable in *Feitz* was of no value here; not because it was destroyed by condemnation, but because it had no value in the market place. More fundamentally the condemnation by the Authority of the premises in which the Liebermans did business was not a taking of their right to transfer the liquor license, which *Feitz* held to be the only taxable incident of the license. This is not to say, however, that the fact that one holds a liquor license is not a factor to be considered with others in determining the before condemnation value of a premises or of a leasehold to which it attaches. Obviously, a valuation witness would and should consider (without testifying to dollar value assigned) the possible enhancement of the value of a property or a leasehold supplied by the fact of its being eligible for licensing as evidenced by the fact that it is licensed. In the instant case, however, as we have explained, because of the condemnation clause there was no leasehold to be valued.

The Court also erred in considering business profits. Old and firmly established case law prohibits such consideration[2] and the Eminent Domain Code, although greatly liberalizing condemnees' rights to compensation, does not provide for it. The Comment of the Joint

---

[2] *Schuylkill Navigation Co. v. Thoburn*, 7 S. & R. 410 (1821). *Sgurlat Estate v. Commonwealth*, 398 Pa. 406, 158 A. 2d 541 (1960).

State Government Commission to Section 705(2)(iii), 26 P.S. §1-705(2)(iii), reads in part: "The income or profits of any business conducted on the property may not be capitalized to show the value of the property; this is in accord with existing Pennsylvania law."

The offers to purchase were also not admissible and should not have been considered by the court. *Saunders v. Commonwealth,* 345 Pa. 423, 29 A. 2d 62 (1942).

Section 609, 26 P.S. §1-609, of the Code provides business dislocation damages as follows: "The condemnee shall be entitled to damages, as provided in this section, for dislocation of a business located on the condemned property, but only where it is shown that the business cannot be relocated without substantial loss of patronage. Compensation for such dislocation shall be the actual monthly rental paid for the business premises, or if there is no lease, the fair rental value of the business premises, multiplied by the number of months remaining in the lease, not including unexercised options, not to exceed twenty-four months or multiplied by twenty-four if there is no lease. The amount of such compensation paid shall not exceed five thousand dollars ($5000) and shall not be less than two hundred fifty dollars ($250). A tenant shall be entitled to recover for such business dislocation even though not entitled to any of the proceeds of the condemnation." Although the Liebermans' lease had, immediately prior to a condemnation, a remaining term of only nine months, the court below awarded damages based on twenty-four months. This was clear error in the face of the limitation of damages in such case to the number of months remaining in the lease. The Redevelopment Authority contends that there should be no damages awarded for this cause because the lease was terminated by operation of the condemnation clause. We disagree. The meaning of the clause is to

be determined consistently with its purpose and the intention of the parties. Its purpose obviously is to spare the owner the inconvenience and expense of an apportionment and division of the total damages with the tenant. Its purpose was not to deny, for the sole benefit of the condemnor, the lessees' right to this item of damage. Further, the lease in this case long predated the Eminent Domain Code which first created the right to recover on this account. We hold therefore that a tenant is entitled to damages for business dislocation despite the presence of a condemnation clause in his lease *provided* he proves that the business cannot be relocated without substantial loss of patronage. See *Apple Storage Company v. School District of Philadelphia*, 4 Pa. Commonwealth Ct. 55, 284 A. 2d 812 (1971).

From what date here is the remaining term to be measured? In *Lectronics Distributors, Inc. v. Redevelopment Authority of Philadelphia*, 217 Pa. Superior Ct. 310, 272 A. 2d 208 (1970), it was held that a tenant who remained in occupancy following condemnation and until a time after the expiration of the term of his lease was entitled to nothing under Section 609 because his peaceful possession was not disturbed during the term. Consistently, the Liebermans are not entitled to damages on this account until their eviction on June 1, 1969. The remaining term of their lease from that date was five months and they are entitled to dislocation damages measured by the product of this number of months and the monthly rent.

The judgment is vacated and the record remanded for a new trial.